UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

RED SEA PACIFIC SDN BHD c/o PACIFIC SHIP : 
MANAGERS SDN BHD, :
                                         :

                     Plaintiff, :    07 Civ 3033 (BSJ)
                                           :

         - against – :

TONGLI SHIPPING CO. LTD. and TONGLI LIMITED, :

                     Defendants. :

-------------------------------------------------------------------------X

### AFFIDAVIT OF COLEEN A. MCEVOY IN SUPPORT OF MOTION TO RECOGNIZE, CONFIRM AND ENFORCE ARBITRATION AWARD AND ENTER PARTIAL DEFAULT JUDGMENT AGAINST DEFENDANTS

STATE OF CONNECTICUT)
                    )    ss:    SOUTHPORT
COUNTY OF FAIRFIELD   )

      Coleen A. McEvoy, being duly sworn, deposes and says:

      1.     I am a member of the Bar of this Court and am an attorney with the firm of

Lennon, Murphy & Murphy, LLC, attorneys for the Plaintiff, RED SEA PACIFIC SDN BHD

c/o PACIFIC SHIP MANAGERS SDN BHD, (hereinafter "Plaintiff"), in the above-entitled

action and I am familiar with the facts and circumstances of this action.

      2.     I make this affidavit pursuant to Rule 55.1 and 55.2(a) of the Civil Rules for the

Southern District of New York, and Rule B(1) of the Supplemental Rules for Certain Admiralty

and Maritime Claims.

      3.     Plaintiff requests that this Court grant its Motion for Partial Default Judgment

against TONGLI SHIPPING CO. LTD. (hereinafter "TSC") and TONGLI LIMITED

(hereinafter "TL") (hereinafter, collectively, "Defendants") as they have been given due and

proper notice of all proceedings against them yet have failed to timely appear or otherwise defend in the action.

4.      At all times material to this action, Plaintiff was, and still is, a foreign company duly organized and existing under foreign law.  Plaintiff was at all material times the Owner of the motor vessel "ALAM SEJAHTERA" (hereinafter the "Vessel").

5.      Upon information and belief, Defendant TSC was and still is a foreign corporation, or other business entity, organized and operating under foreign law and was, at all material times, the charterer of the Vessel.

6.      Upon information and belief, Defendant TL was and still is a foreign corporation, or other business entity, organized and operating under foreign law and was, at all material times, the alter-ego and/or alias of the Defendant TSC.

7.      Defendant TL is properly considered a party to the subject contract and arbitration award as the alter ego, alias and/or prime mover and controller of Defendant TSL.

8.      By a charter party dated December 21, 2006, Plaintiff chartered the Vessel to TSC.  *See Charter Party annexed hereto as Exhibit "1"*.

9.      Certain disputes arose between the parties regarding TSC's failure to pay hire and costs of shifting at Kaohsiung due and owing under the charter party.  Despite due demand, Defendant TSC failed to pay or otherwise secure Plaintiff's claim.

10.      Therefore, Plaintiff commenced arbitration proceedings against Defendant TSC in London in accordance with the charter party

11.      Clause 45 (b) of the charter party provides: "SEE BIMCO STANDARD LAW & ARBITRATION CLAUSE 1998 – ENGLISH LAW, LONDON ARBITRATION."  The charter party further states: "This charter party shall be governed by and construed in accordance with

English law and any dispute arising out of or in connection with this charter party shall be referred to arbitration in London in accordance with the arbitration act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this clause." *See Exhibit "1."*

12.    On February 26, 2008, a Final Arbitration Award was rendered in Plaintiff's favor. *See Final Arbitration Award annexed hereto as Exhibit "2."*

13.    In the Final Arbitration Award, the arbitrators directed Defendant TSC to pay the Plaintiff the sum of $86,495.99, together with interest at the rate of 7.75% per annum, compounded quarterly, from January 21, 2007 until the date of payment.

14    Furthermore, Defendant TSC was directed to pay the cost of the Final Arbitration Award. The arbitrators assessed the cost of the Final Arbitration Award in the amount of £6,075.00 which is approximately $12,194.89, together with interest at the rate of 7.5% per annum, compounded quarterly, from February 26, 2008 until the date of payment.

15.    Plaintiff expects to recover the following amounts pursuant to the Final Arbitration Award:

| | |
|---|---|
| A.  Principal amount: | $86,495.99 |
| B.  Estimated interest on principal amount at 7.75% per annum, compounded quarterly, from January 21, 2007 until estimated date of recovery (April 1, 2008): | $ 8,304.94 |
| C.  Cost of Award (£6,075.00): | $12,194.89 |
| D.  Estimated interest on cost of award at 7.5% per annum, compounded quarterly, from February 26, 2008 until estimated date of recovery (April 1, 2008): | $    89.98 |

Total:                                                                                              **$112,539.01**

16.     The London arbitrators reserved their right to issue a further award regarding costs of arbitration.  Plaintiff intends to apply for and enforce the Award of costs of arbitration in this action.

17.     This action was commenced on April 16, 2007 by the filing of a Verified Complaint that included a prayer for an Ex-Parte Order for Process of Maritime Attachment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and the Federal Arbitration Act, 9 U.S.C. §§ 1 and 8. *See Verified Complaint annexed hereto as Exhibit "3."*

18.     On the same day, the Court issued an Ex-Parte Order of Maritime Attachment and Garnishment.  The Ex-Parte Order authorized the Plaintiff to attach Defendants' property up to the sum of $139,433.05, located within this judicial district and belonging to the Defendants. *See Ex-Parte Order annexed hereto as Exhibit "4."*

19.     The Ex-Parte Order and Process of Maritime Attachment and Garnishment ("PMAG") named garnishee banks believed to have assets due and owing to the Defendants. The Ex-Parte Order and PMAG were served upon the garnishee banks. *See PMAG annexed hereto as Exhibit "5".*

20.     Pursuant to the Ex-Parte Order and PMAG, Defendants' funds are being restrained in the total amount of $139,433.05.

21.     Particularly, Defendants' property was attached at American Express Bank in the sum of $139,433.05 on or about April 19, 2007.

22.     Defendants were given due notice of the instant action before this Court.

23.     On April 19, 2007, Defendants were advised by letter, sent by FedEx courier and facsimile, that that an order of maritime attachment had been obtained on Plaintiff's behalf

authorizing attachment in New York of any of Defendants' assets. *See Letter dated April 19, 2007 annexed hereto as Exhibit "6"*

24.    The letter notified Defendants that Plaintiff had successfully attached monies at American Express Bank in the sum of $139,433.05.

25.    All pleadings filed in the instant action, including the Summons and Complaint, were sent to the Defendants with this letter. FedEx confirmed that the letter was received by Defendants on April 23, 2007. *See Affidavit of Service attached hereto as Exhibit "7."*

26.    Despite the notices provided, Defendants failed to appear in this action or file a responsive pleading.

27.    In its Verified Complaint, Plaintiff prayed for the issuance of Process of Maritime Attachment and Garnishment as well as an order from this court recognizing, confirming and enforcing the London arbitration award(s) in Plaintiff's favor pursuant to 9 U.S.C. §§ 201 *et seq.*

28.    In addition, Plaintiff prayed for such other, further and different relief as the Court may deem just and proper. *See Exhibit "3."*

29.    "In Federal Practice, a defendant having been served with process who fails to make timely appearance or answer is subject to judgment by default under Rule 55(a)." *See Danish Fur Breeders Association v. Olga Furs, Inc., Hatzis Bro.s*, 1990 U.S. Dist. LEXIS 4779, at *4 (S.D.N.Y 1990); *see also Fed. R. Civ. P. 55; see also Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95-96 (2d Cir. 1993).

30.    Defendants were given due notice of the instant action before this Court pursuant to Supplemental Admiralty Rule B(2)(b) as Plaintiff properly mailed to the Defendants the verified complaint, summons, and process of attachment using a form of delivery requiring

return receipt. Rule B(2)(b) of the Supplemental Rules for Certain Admiralty & Maritime

Claims provides as follows:

> (2) Notice to Defendant. No default judgment may be entered except upon proof-
> which may be by affidavit- that: (b) the plaintiff or the garnishee has mailed to the
> defendant the complaint, summons, and process of attachment or garnishment,
> using any form of mail requiring return receipt;

*Id.*

31.    As the requirements of Rule B(1) of the Supplemental Rules for Certain

Admiralty and Maritime Claims have been met, and Defendants have failed to make an

appearance, Plaintiff is entitled to default judgment under Rule 55 of the Federal Rules of Civil

Procedure.

32.    Defendants, foreign corporations, are not in the military.

33.    A proposed partial default judgment granting Plaintiff's Motion for Partial

Default Judgment, recognizing and confirming the Final Arbitration Award pursuant to the New

York convention, and granting Plaintiff's request for attorney's fees and costs is annexed hereto

as *Exhibit "8."*

34.    As Defendants have failed to appear in this action despite having been provided

notice of this action pursuant to Supplemental Admiralty Rule B(2)(b), Plaintiff is entitled to

partial default judgment and an order recognizing and confirming the Final Arbitration Award

pursuant to the New York Convention.

35.    Defendant has defaulted and has otherwise failed to pay the amounts due and

owing under the binding arbitration award. *See Certificate of Default annexed hereto as Exhibit*

*"9."*

36.    Plaintiff has incurred attorney's fees and costs in the approximate amount of $4,653.21 in obtaining/maintaining the Rule B attachment, making the instant application to confirm the London arbitration awards and seeking the entry of default.

37.    Plaintiff expects to incur an additional $800.00 in attorney's fees and costs to confirm the awards, obtain default judgment and execute upon the funds restrained in New York. *See Statement of Damages annexed hereto as Exhibit "10."*

38.    Plaintiff respectfully requests that the Final Arbitration Award be duly recognized, confirmed and enforced, that judgment be rendered in its favor and against the Defendant as a partial final judgment against Defendants in the total sum of **$112,539.01**, and that the garnishee banks be directed to turn over Defendants' funds in the amount of **$112,539.01** to Plaintiff's counsel or at Plaintiff's counsel's direction. *See Proposed Order Directing Partial Default Judgment annexed hereto as Exhibit "8."*

39.    If an agreement cannot be reached between the parties, Plaintiff intends to seek a further award of costs in the London arbitration or in the English High Court of Justice, as provided for in the Final Arbitration Award. Plaintiff respectfully requests that this court retain jurisdiction over the recognition, confirmation and enforcement of such award of costs. *See Exhibit 2.*

Dated: New York, NY
      March 13, 2008

 

                                                            Coleen A. McEvoy

Sworn and subscribed to before me
this 13th day of March, 2008

Notary Public

## AFFIRMATION OF SERVICE

I hereby certify that on March 13, 2008, a copy of the foregoing will be filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by express courier to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

Service of the foregoing is being made on Defendants via express courier

_____
Coleen A. McEvoy

# EXHIBIT 1

Code Name : NYPE 93
Recommended by
The Baltic and International Maritime Council (BIMCO)
The Federation of National Association of
Ship Brokers and Agents (FONASBA)

TIME CHARTER ©
New York Produce Exchange Form
Issued by the Association of Ship Brokers and Agents (U.S.A.) Inc.

November 6th, 1913 – Amended October 20th, 1921, August 6th, 1931, October 3rd, 1946
Revised June 12th, 1981, September 14th, 1993

1. THIS CHARTER PARTY, made and concluded in Beijing.........................................................................
2. This ................................................................21st .....................day of .............December ...... ...............2006
3. Between *Red Sea Pacific Sdn Bhd* C/O PACIFIC SHIP-MANAGERS SDN,BHD, MALAYSIA
4. .............................................................................................................................................................
5. Owners of the Vessel described below, and  Tongli Shipping Co. Ltd .................................................
6. .............................................................................................................................................................
7. .............................................................................................................................................................
8. Charterers..............................................................................................................................................
9. Description of Vessel
10. Name MV ALAM SEJAHTERA ..........Flag Malaysia ............, Built 1995 (year)........................ .........................
11. Port and number of Registry ...............................................................................................................
12. Classed ABS in....................................................................................................................................
13. Deadweight........29, 692 long / metric tons (cargo and bunkers, including freshwater and...................
14. Stores not exceeding .....................long/ /metric tons) on a salt water draft of 10.684 M..................
15. On summer free board  .......................................................................................................................
16. Capacity...... 34,825 cubic meter grain 33,359 cubic meter bale space.................................................
17. Tonnage GT/GRT GRT/NRT 17,878 / 10,576 T .................................................................................
18. Speed about  13 knots, fully laden, in good weather conditions up to and including maximum..............
19. Force 3  on the Beaufort Wind Scale, on a consumption of about 18.00 long / /Metric.........................
20. Tons of IFO 180 CST ISO 8217 2005 (E) GRADE ISO –F –RME 25 + about 1.6 MT MGO ISO 8217 2005 ISO =F-
    DMA MDO IN AT SEA AND IN PORT WORKING .
21. " Delete as appropriate "
22. For further description see Appendix  "A" (if applicable)
23. 1.  Duration
24. The Owners agree to let and the Charterers agree to hire the Vessel from the time of delivery for a period
25. of One (1) Time Charter Trip duration about 25~ 30 days without guarantee via safe ports, Safe Berths, safe
    anchorages, always afloat, always accessible, always within Institute Warranty Limit.........................
26. .............................................................................................................................................................
27. ............................................................................................ within below mentioned trading limits..
28. .............................................................................................................................................................
29. 2. Delivery
30. The Vessel shall be placed at the disposal of the Charterers at Dropping Last Outward sea Pilot ( DLOSP)
    Qinhuangdao berth 11 or 12 in Owners' option, any time day or night, Sunday and Holidays included..........
31. .............................................................................................................................................................
32. .............................................................................................................................................................
33. ............................................................................................................ The Vessel on her delivery
34. shall be ready to receive cargo with clean-swept holds and tight, staunch,   strong   and   in     every     way fitted
35. for ordinary cargo service & free from residues of previous cargoes & having   water   ballast   and   with
    sufficient power to operate all cargo-handling gear
36. simultaneously.
37. The Owners/Master shall give the Charterers notice of fixing on Vessel expected date of

38. delivery.
39. **3. On-Off Hire Survey**
40. Joint On/Off-Hire surveys to ascertain the Vessel's condition and the quantity of bunkers remaining on board
41. shall be carried out on delivery and redelivery by mutually agreed surveyors. Joint On-Hire survey to be
42. carried out at first loading port after delivery of vessel and joint Off-Hire survey to be carried out at last
43. discharging port prior to redelivery of Vessel. The time and costs for joint On/Off-Hire surveys to be shared
44. equally between Owners and Charterers, however vessel to remain On-Hire if the surveys are carried out
45. without interruption to Charterers operations.............................................................................................
46. ....................................................................................................................................................................
47. ....................................................................................................................................................................
48. **4. Dangerous Cargo / Cargo Exclusions**
49. (a) The Vessel shall be employed in carrying lawful merchandise excluding any goods of a dangerous,
50. injurious, flammable or corrosive nature unless carried in accordance with the requirements or
51. recommendations of the competent authorities of the country of the Vessel's registry and of ports of
52. shipment and discharge and of any intermediate countries or ports through whose waters the Vessel must
53. pass. Without prejudice to the generality of the foregoing in addition the following are specifically
54. excluded, livestock of any description, arms, ammunition , explosives nuclear and radioactive materials.
55. livestock, radio and radioactive goods and its wastes, nuclear products, petroleum and its products, petcoke
56. logs, asphalt, pitch, ammonium nitrate, turnings, motorblocks, quabracho, hides, acids, explosives, arms,
57. ammunitions, direct reduced iron ore pellets, inflammable goods, dangerous and injurious cargoes, creosote
58. and creosoted goods, sponge iron, black powder, blasting caps, tar, shavings, HBI, saltpeter, chilean nitrate
59. of soda, quick lime, naptha, cement, calcium carbide, borax, chrome ore, silicon magnesim, turpentine,
60. carbon black, asbestos, ammonium sulphate, calcium hypochloride, bitumen, coals, caustic soda, expellers,
61. fishmeal salt, ferrochrome, ferrosilicon, copra, scrap, sulphur, soda ash, gypsum, concentrates, detonators,
62. cement clinkers, bombs, dynamite, war materials, IMO/IMDG cargoes.
63. .............
64. ....................................................................................................................................................................
65. ~~(b) If IMO classified cargo is agreed to be carried the amount of such cargo shall be limited to~~
66. ~~........................................tons and  the Charterers shall provide the Master with any evidence he may~~
67. ~~reasonably  require to show that the cargo is packaged, labelled, loaded and stowed in  accordance with IMO~~
68. ~~regulations, failing which the Master is entitled to refuse such cargo or , if already loaded , to   unload it at~~
69. ~~the Charterers' risk and expense. The vessel shall be employed in carrying lawful bagged sugar only .~~
70. **5. Trading Limits**
71. Vessel to be employed in lawful trades for the carriage of lawful and harmless merchandise only between
72. safe ports where vessel can safely lie always afloat and trading to be always within IWL but always
73. specifically excluding Yugoslavia, Bosnia, Croatia, all territories of former Yugoslavia, Albania, Israel,
74. Lebanon, Syria, Turkish occupied Cyprus, Libya, Zaire, Somalia, Iraq, North Korea, Sri Lanka, Campuchea,
75. Angola, Cabinda, Cuba, Liberia, Sierra Leone, Abkhazia, north & south Yemen, Belize, Cis
76. Russian feast, Georgia (black sea), Nigeria, Cameroun, Ethiopia and Eritrea, Amazon river, St. Lawerence
river/great lakes, countries/places where U.N./U.S.A sanctions and/or restrictions are in force and all war
and/or war like zones. Orders of owners war risk underwriters are always to be followed.
If at any time during the period of this charter the voyage involves sailing from East Africa including islands
to red sea, Gulf of Aden, Gulf of Oman, Persian Gulf, Arabian Gulf or any other ports/areas on this route
and/or vice versa, the vessel not to sail/pass between the Somalian coast and Socotra island but to always
sail/pass east of Socotra island which not to be considered as a deviation.
77. **6. Owners to Provide**
78. The Owners shall provide and pay for the insurance of the Vessel, except as otherwise provided , and for
79. all provisions, cabin, deck, engine-room and other necessary stores, including boiler water; shall pay for
80. wages, consular shipping and discharging fees of the crew and charges for port services , pertaining to  the
81. crew; shall maintain the Vessel's class and keep her in a thoroughly efficient state in hull machinery and
82. equipment for and during the service, and have a full complement of officers and crew.
Basic war risk insurance to be for owners account. any additional/extra insurance premium (which to be
arranged by owners) for hull and machinery and officers/crew for trading to a restricted area, including
blocking and trapping insurance and crew war bonus to be for Charterers account and vessel to remain on
full  hire. The additional/extra premium not to exceed that quoted by Lloyds of London. Charterers to pay the
additional  premium upon owners faxing their underwriters/brokers invoice and the original invoice to follow
later by mail.
83. **7. Charterers to Provide**
84. The Charterers, while the Vessel is on hire, shall provide and pay for all bunkers    except as otherwise
85. agreed; shall pay for port charges (including compulsory watchmen and cargo watchmen , and compulsory
86. garbage disposal), all communication expenses pertaining to the Charterers business  at cost, pilotages,
87. towages, canal dues, agencies, commissions, consular charges (except those pertaining to individual crew members

88. of flag of the Vessel), and all other usual expenses except those stated in <u>Clause 6</u> , but when the Vessel
89. puts into a port for causes for which the Vessel is responsible (other than by stress of weather ), then all
90. such charges incurred shall be paid by the Owners. Fumigations ordered because of illness of the crew
91. shall be for the Owners' account . Fumigations ordered because of cargoes carried or ports visited while
92. the Vessel is employed under this Charter Party shall be for the Charterers account . All other fumigations
93. shall be for the Charterers' account after the Vessel has been on Charter for a continuous period of six
94. months or more .
95. The Charterers' shall provide and pay for necessary dunnage and also any extra fittings requisite for a
96. Special trade or unusual cargo, but the Owners shall allow them the use of any dunnage already aboard
97. The Vessel. Prior to redelivery the Charterers shall remove their dunnage and fittings at their cost and in
98. Their time.

99. **8. Performance of Voyages**
100. (a) The Master shall perform the voyages with due despatch, and shall render all customary assistance
101. with the Vessel's crew. The Master shall be conversant with the English language and (although
102. appointed by the Owners) shall be under the orders and directions of the Charterers as regards
103. employment and agency; and the Charterers shall perform all cargo handling, including but not limited to
104. loading, stowing, trimming , lashing, securing, dunnaging, unlashing, discharging , and tallying, at their risk
105. and expense, under the supervision of the Master.
106. (b) If the Charterers shall have reasonable cause to be dissatisfied with the conduct of the Master or
107. Officers, the Owners shall, on receiving particulars of the complaint, investigate the same, and, if
108. Necessary , make a change in the appointments.

109. **9. Bunkers**
    Bunker on delivery about IFO 700 MT and MGO 80 MT Bunker prices as per Singapore prices upon clean
    fixture. Bunker on redelivery as on board. 15 days hire plus (+) value of estimated consumption of bunkers to be
    remitted to owners bank account within 3 ( Three ) Banking days from vessel delivery Bunkers remaining on board on
    re-delivery to be about same
    as delivery. Estimated value of consumable bunkers on re-delivery to be deducted from the last sufficient hire
    payment . Minor Difference to be settled along with final /bunkers statement of account within 3 ( Three ) days
    of re-delivery.
110. ~~(a) The Charterers on delivery   and the owners on redelivery, shall take over and pay for all fuel and~~
111. ~~diesel oil remaining on board the Vessel as hereunder . The Vessel shall be delivered with~~
112. ~~.....................................long/metric tons of fuel oil at the price of .........................per ton;~~
113. ~~.......................................tons of diesel oil at the price of .......................per ton . The Vessel shall~~
114. ~~be redelivered with ..............................tons of fuel oil at the price of ........................per ton;~~
115. ~~..................tons of diesel oil at the price of ...........................per ton.~~
116. Same tons apply throughout this clause.
117. (b) Owners have the option to bunker vessel enroute and same not to interfere with charterers'
    operations. The Charterers shall supply bunkers of a quality suitable for burning in the Vessel's engines
118. and auxiliaries and which conform to the vessel's specification (s) as set out in Appendix A.
119. The Owners reserve their right to make a claim against the Charterers for any damage to the main engines
120. Or the auxiliaries caused by the use of unsuitable fuels or fuels not complying with the agreed
121. specification (s). Additionally, if bunker fuels supplied do not conform with the mutually agreed
122. specification (s)  or otherwise prove unsuitable for burning in the Vessel's engines or auxiliaries, the Owners
123. shall not be held responsible for any reduction in the Vessel's speed performance and/or increased bunker
124. consumption, nor for any time lost and any other consequences.

125. **10. Rate of Hire / Redelivery Areas and Notices**
126. The Charterers shall pay for the use and hire of the said Vessel at the rate of USD 20,000(twenty thousand U.S.
    dollars) per day pro-rata Including overtime payable every 15 days to the Owners' nominated bank, first hire
    and value estimated bunker consumption to be paid within 3 banking days of vessel's delivery.
127. .........................................U S Currency, or $ ........................ ~~U.S. currency per ton on the vessel's total deadweight~~
128. ~~carrying capacity including bunkers and stores on ......................... Summer freeboard, per 30 days~~
129. commencing on and from the day and time of her delivery, as aforesaid and at and after the same rate for any part
130. of a month, day hire shall continue until the hour of the day of her redelivery in like good order and condition.
131. ordinary wear and tear excepted to the owners (unless vessel lost)  at on dropping last outward sea pilot
132. one safe port Singapore/Japan range including Taiwan. Port In Charterers' Option ( PICO) any time day or
    night Sunday and Holidays included.
133. ...................................................................................................................... unless mutually agreed.
134. ...............................................................................................................................................................
135. The Charterers shall give the Owners not less than 15/10/7/5 days approximate notice of the Vessel's
136. Expected date and probable port of redelivery, and 3/2/1 days definite notice of date and port of redelivery.
137. For the purpose of hire calculations, the times of delivery, redelivery or termination of charter shall be
138. adjusted to GMT but physical delivery/redelivery to be based on local time.

139.11. Hire payment
140.(a) Payment
141.Payment of Hire shall be made so as to be received by the Owners or their designated payee in,
142.viz ......OWNERS BANK to be advised

```
    Owns' bank details:
    BANK OF NEW YORK, NEW YORK
FOR ACCOUNT OF OCBC BANK (M) BERHAD
ACCOUNT NO: 8033232609
SWIFT CODE: IRVTUS3N
FAVOURING MALAYSIAN BULK CARRIERS BERHAD
US DOLLARS ACCT NO: 701-112355-6
SWIFT CODE: OCBCMYKLXXX
(REF: M/V ALAM SEJAHTERA / TONGLI / CP DD 21 DEC 2006)
```

143. For the last 15 days hire or part of same the approximate amount of hire is payable and should same not cover the actual time. Hire is to be paid for the balance day by day, as it becomes due.
144. Subsequent hire to be paid basis estimated completion, but always before expiry of the last hire
      Final Hire, Minor difference to be settled along with final hire / bunkers statement of account w/l 3 (Three)
      Redelivery.
145. In
146. currency, or in United States Currency, in funds available to the
147. Owners on the due date, 15 days in advance, and for the last month 15 days or part of same the approximate
148. Amount of hire, and should same not cover the actual time, hire shall be paid for the balance day by day
149. As it becomes, due, if so required by the Owners. Failing the punctual and regular payment of the hire
150. Or on any fundamental breach of whatsoever of this Charter Party, the Owners shall be at liberty to
151. Withdraw the Vessel from the Service of the Charterers without prejudice to any claims they (the Owners)
152. May otherwise have on the Charterers.
153. At any time after the expiry of the grace period provided in Sub-clause 11(b) hereunder and while the
154. hire is outstanding , the Owners shall, without prejudice to the liberty to withdraw, be entitled to withhold
155. the performance of any and all of their obligations hereunder and shall have no responsibility whatsoever
156. or any consequences thereof , in respect of which the Charterers hereby indemnify the Owners, and hire
157. shall continue to accrue and any extra expenses resulting from such withholding shall be for the
158. Charterers' account.
159. (b) Grace Period
160. Where there is failure to make punctual and regular payment of hire due to oversight, negligence, errors
161. or omissions on the part of the Charterers or their bankers, the Charterers shall be given by the Owners
162. .....2.... Clear banking days (as recognized at the agreed place of payment) written notice to rectify the
163. failure,  and when so rectified within those .....2.... days following the Owners ' notice, the payment shall
164. stand as regular and punctual.
165. Failure by the Charterers to pay the hire  within ....2.... days of their receiving the Owners' notice as
166. provided herein, shall entitle the Owners to withdraw as set forth in Sub-Clause 11 (a) above.


167. (c) Last Hire Payment
168. Should the Vessel be on her voyage towards port of redelivery at the time the last and/or the penultimate
169. Payment of hire is /are due, said payment(s) is/are to be made for such length of time as the Owners and
170. The Charterers may agree upon as being the estimated time necessary to complete the voyage, and taking
171. into account bunkers actually on board, to be taken over by the Owners and estimated disbursements for
172. the Owners' account before redelivery.(See Clause 59)Should same not cover the actual time, hire is to be
      paid for the
173. balance, day by day, as it becomes due. When the Vessel has been redelivered, any difference is to be
174. refunded by the Owners or paid by the Charterers, as the case may be.
175. (d) Cash Advances
176. Cash for the Vessel's ordinary disbursements at any port may be advanced by the Charterers, as required
177. by the Owners, subject to 2 1/2 percent commission and such advances shall be deducted from the hire.
178. The Charterers, however, shall in no way be responsible for the application of such advances.
179.12. Berths
180. The Vessel shall be loaded and discharged in any safe dock or at any safe berth or safe place that
181. Charterers or their agents may direct, provided the Vessel can safely enter, lie and depart always afloat
182. At any time of tide.
183.13. Spaces Available

184. (a) The whole reach of the Vessel's holds, decks and other cargo spaces (not more than she can
185. reasonably and safely stow and carry), also accommodations for super cargo, if carried , shall be at the
186. Charterers' disposal, reserving only proper and sufficient space for the Vessel's officers, crew, tackle,
187. Apparel, furniture, provisions, stores and fuel.
188. (b) In the event of deck cargo being carried, the Owners are to be and are hereby indemnified by the
189. Charterers for any loss and/or damage and/or liability of whatsoever nature caused to the Vessel as a
190. result of the carriage of deck cargo and which would not have arisen had deck cargo not been loaded.
     Deck and/or hatch cover cargos not allowed.
191. Supercargo and Meals
192. The Charterers are entitled to appoint a supercargo, who shall accompany the Vessel at the Charterers'
193. Risk and see that voyages are performed with due despatch. He is to be furnished with free
194. Accommodation and same fare as provided for the Master's table, the Charterers paying at the rate of
195. USD 15 Per day. The Owners shall victual pilots and customs officers, and also, when
196. authorized by the Charterers or their agents, shall victual tally clerks, stevedore's foreman, etc.,
197. Charterers paying at the rate of USD 3 per meal for all such victualling.
198. 15. Sailing Orders and Logs
199. The Charterers shall furnish the Master from time to time with all requisite instructions and sailing
200. directions, in writing , in the English language, and the Master shall keep full and correct deck and engine
201. logs of the voyage or voyages, which are to be patent to the Charterers or their agents, and furnish the
202. Charterers, their agents or supercargo, when required, with a true copy of such deck and engine logs,
203. Showing the course of the Vessel, distance run and the consumption of bunkers. Any log extracts
204. Required by the Charterers shall be in the English language.
205. 16) Delivery/Canceling
206. If required by the Charterers, time shall not commence before 31st December 2006... and should the
207. Vessel not be ready for delivery on or before ..............6th January 2007 ...........,but not later than 24 hours,
208. The Charterers shall have the option of canceling this Charter Party.
209. Extension of Canceling
210. If the Owners warrant that, despite the exercise of due diligence by them, the Vessel will not be ready
211. for delivery by the Canceling date, and provided the Owners are able to state with reasonable certainty
212. the date on which the Vessel will be ready, they may, at the earliest seven days before the Vessel is
213. expected to sail for the port or place of delivery, require the Charterers to declare whether or not they will
214. cancel the Charter Party. Should the Charterers elect not to cancel, or should they fail to reply within two
215. days or by the cancelling date, whichever shall first occur, then the seventh day after the expected date
216. of readiness for delivery as notified by the Owners shall replace the original cancelling date. Should the
217. Vessel be further delayed, the Owners shall be entitled to require further declarations of the Charterers in
218. accordance with this clause. IF IT IS APPARENT THAT THE VESSEL IS GOING TO BE DELAYED, OWNERS ARE
     TO KEEP CHARTERERS ADVISED AND TO REQUEST FOR AN EXTENSION OF THE LAYCAN WHENEVER
     APPLICABLE. CHTRS ARE TO REPLY WITHIN 24 HOURS EITHER AGREEING TO THE LAYCAN EXTENSION
     TILL THE NEXT DAY AFTER VESSEL'S ARRIVAL OR TO CANCEL THE CHARTER. FAILURE TO REPLY IN THE
     STIPULATED PERIOD SHALL BE DEEMED TO REPRESENT A MUTUAL CANCELLATION OF THE CHARTER.
219. 17 Off Hire
220. In the event of loss of time from deficiency and/or default and/or strike of officers or crew, or deficiency
221. of stores, fire, breakdown of , or damages to hull, machinery or equipment, grounding, detention by the
222. arrest of the Vessel, (unless such arrest is caused by events for which the Charterers, their servants,
223. agents or sub contractors are responsible) or detention by average accidents to the Vessel or cargo unless
224. resulting from inherent vice, quality or defect of the cargo, dry docking for the purpose of examination or
225. painting bottom, or by any other similar cause preventing the full working of the Vessel, the payment of
226. hire and overtime, if any, shall cease for the time thereby lost. Should the Vessel deviate or put back
227. during a voyage, contrary to the orders or directions of the Charterers, for any reason other than accident
228. to the cargo or where permitted in lines 257 to 258 hereunder, the hire is to be suspended from the time
229. of her deviating or putting back until she is again in the same or equidistant position from the destination
230. and the voyage resumed therefrom. All bunkers used by the Vessel while off hire shall be for the Owners'
231. account. In the event of the Vessel being driven into port or to anchorage through stress of weather,
232. trading to shallow  harbors or  to rivers or ports with bars, any detention of the Vessel and/or expenses
233. resulting from such detention shall be for the Charterers' account. If upon the voyage the speed be
234. reduced by defect in, or breakdown of, any part of her hull, machinery or equipment, the time so lost, and
235. the cost of any extra bunkers consumed in consequence thereof, and all extra proven expenses may be
236. deducted from the hire.
237. 18. Sublet
238. Unless otherwise agreed, the Charterers shall have the liberty to sublet the Vessel for all or any part of
239. the time covered by this Charter Party, but the Charterers remain responsible for the fulfillment of this
240. Charter Party.

241. 19. Dry docking

242. The Vessel was last dry docked ........

243. (a)~~The Owners shall have the option to place the Vessel in dry dock during the currency of this Charter~~

244. ~~at a convenient time and place, to be mutually agreed upon between the Owners and the Charterers, for~~

245. ~~bottom cleaning and painting and/or repair as required by class or dictated by circumstance.~~

246. (b) Except in case of emergency no dry docking shall take place during the currency of this Charter

247. Party.

248. Delete as appropriate.

249. 20. Total Loss

250. Should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or

251. Being last heard of shall be returned to the Charterers at once.

252. 21. Exceptions

253. The act of God, enemies, fire restraint of princes, rulers and people, and all dangers and accidents of the

254. seas, rivers, machinery, boilers, and navigation, and errors of navigation throughout this Charter, always

255. mutually excepted.

256. 22. Liberties

257. The Vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels

258. in distress, and to deviate for the purpose of saving life and property.

259. 23. Liens

260. The Owners shall have a lien upon all cargoes and all sub-freights and/or sub-hire for any amounts due

261. Under this Charter Party, including general average contributions, and the Charterers shall have a lien on

262. the Vessel for all monies paid in advance and not earned, and any overpaid hire or excess deposit to be

263. returned at once.

264 The Charterers will not directly or indirectly suffer, nor permit to be continued, any lien or encumbrance,

265. which might have priority over the title and interest of the Owners in the Vessel  The Charterers

266. undertake that during the period of this Charter Party, they will not procure any supplies or necessaries

267. or services, including any port expenses and bunkers, on the credit of the Owners or in the Owner's time.

268. 24. Salvage

269. All derelicts and salvage shall be for the Owners' and the Charterers' equal benefit after deducting

270. Owners and Charterers' expenses and crew's proportion.

271. 25. General Average

272. General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994,~~as amended 1990, or~~
and

273. ~~subsequent modification thereof, in~~ LONDON .................................,,.......and settled in U.S. Currency

274. currency.

275. The Charterers shall procure that all bills of lading issued during the currency of the Charter Party will

276. Contain a provision to the effect that general average shall be adjusted according to York-Antwerp Rules

277. 1974, as amended 1990, or any subsequent modification thereof and will include the "NEW JASON

278. Clause" as per Clause 31.

279. Time Charter hire shall not contribute to general average.

280. 26. Navigation

281. Nothing herein stated is to be construed as a demise of the Vessel to the Time Charterers, The Owners

282. shall remain responsible for the navigation of the Vessel, acts of pilots and tug boats, insurance, crew,

283. and all other matters, same as when trading for their own account.

284. 27 . Cargo Claims

285. Cargo claims as between the Owners and the Charterers shall be settled in accordance with the Inter-Club

286. New York Produce Exchange Agreement of February 1970, as amended May, 1984, and September 1996
or any subsequent

287. Modification or replacement thereof.
    with the view to protect Owners and Charterers against possible claims for cargo damages, the
    owners have the option to appoint surveyors nominated by their P&I Club to perform cargo
    condition surveys concurrently with loading and discharging certain cargoes such as steel, and
    other cargoes which are potentially liable to cargo claims. Cost for such surveys to be shared
    equally between Owners and Charterers.

288. 28. Cargo Gear and Lights

289. The Owners shall maintain the cargo handling gear of the Vessel which is as follows:

290. (See Clause 46)..................................................................................................................

291. .........................................................................................................................................

292. providing gear (for all derricks or cranes) capable of lifting capacity as described.  The Owners shall also

293. provide on the Vessel for night work lights as on board, but all additional lights over those on board shall

294. be at the Charterers' expense. The Charterers shall have the use of any gear on board the Vessel.   If

295. required by the Charterers, the Vessel shall work night and day and all cargo handling gear shall be at the

296. Charterers' disposal during loading and discharging. In the event of disable cargo handling gear, or
297. insufficient power to operate the same, the Vessel is to be considered to be off-hire to the extent that
298. Time is actually lost to the Charterers and the Owners to pay stevedore stand-by charges occasioned.
299. thereby, unless such disablement of insufficiency of power is caused by the Charterers' stevedores. If
300. required by the Charterers, the Owners shall bear the cost of hiring shore gear in lieu thereof, in which
301. case the vessel shall remain on hire.

302. **29.  Crew Overtime**
303. ~~In lieu of any overtime payments to officers and crew for work ordered by the Charterers or their agents~~
304. ~~The Charterers shall pay the Owners, concurrently with the hire ..............................per month~~
305. ~~Or pro rata.~~

306. **30.    Bills of Lading**
307. (a) The Master shall sign the bills of lading or waybills for cargo as presented in conformity with mates
308. and tally clerk's receipts. However, the Charterers may sign bills of lading or waybills on behalf of the
309.    Master, with the Owners prior written authority, always in conformity with mates and tally clerk's receipts.
310.    (b) All bill(s) of lading shall be without prejudice to this charter party and charterers shall
311. indemnify owners against all consequences or liabilities which may arise from any inconsistency
312. between this charter party and any bills of lading or waybills signed by Charterers or by the master
313. at their request
314. (c) ~~Bills of lading covering deck cargo shall be claused "Shipped on deck at Charterers' Shippers' and~~
315. ~~Receivers' risk, expense and responsibility, without liability on the part of the Vessel, or her. Owners for~~
316. ~~Any loss, damage, expense or delay howsoever caused."~~
317. Deck and/or hatch cover cargos not allowed.

318. **31.  Protective Clauses**
319.   This Charter Party is subject to the following clauses all of which are also included in all bills of lading
320.   or waybills issued hereunder

321. (a) CLAUSE PARAMOUNT
322. This bill of lading shall have effect to the provisions of the Carriage of Goods by Sea Act of the
323. United States, the Hague rules, or the Hague-Visby Rules, as applicable, or such other similar national
324. Legislation as may mandatorily apply by virtue of origin or destination of the bills of Lading, which shall
325. Be deemed to be incorporated herein and nothing herein contained shall be deemed a surrender by the
326. Carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said
327. Applicable Act. If any term of this bill of lading be repugnant to said applicable act to any extent, such
328. Term shall be void to that extent, but no further."
329. and
330. (b) BOTH-TO- BLAME COLLISION CLAUSE
331. If the ship comes into collision with another ship as a result of the negligence of the other ship and any
332. act, neglect or default of the master, mariner, pilot or the servants of the carrier in the navigation or in
333. the management of the ship, the Owners of the goods carried hereunder will indemnify the carrier against
334. all loss or liability to the other or non-carrying ship or her owners in so far as such loss or liability represents
335. loss, of, or damage to, or any claim whatsoever of the Owners of said goods, paid or payable by the other
336. or non-carrying ship or her Owners to the owners of said goods and set off, recouped or recovered by the
337. other or non carrying ship or her owners as part of their claim against the carrying ship or carrier.
338. The foregoing provisions shall also apply where the Owners, operators or those in charge of any ships or
339. Objects other then, or in addition to, the colliding ships or objects are at fault in respect to a collision or
340. Contract."
341. and
342. (c) NEW JASON CLAUSE
343. In the event of accident, danger, damage or disaster before or after the commencement of the voyage
344. resulting from any cause whatsoever, whether due to negligence or not, for which, or for the
345. consequences of which, the carrier is not responsible, by statute, contract, or otherwise, the goods,
346. Shippers, consignees, or owners of the goods shall contribute with the Carrier in general average to the
347. Payment of any sacrifices, losses, or expenses of a general average nature that may be made or incurred
348. And shall pay salvage and special charges incurred in respect of the goods.
349. If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully as if salving ship
350. or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover
351. the estimated contribution of the goods and any salvage and special charges thereon shall if required,
352. be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery."
353. and
354. (d) U.S. TRADE – DRUG CLAUSE
355. In pursuance of the provisions of the U.S. Anti Drug Abuse 1986 or any re-enactment thereof, the
356. Charterers warrant to exercise the highest degree of care and diligence – in preventing unmanifested

357. Narcotic drugs and marijuana to be loaded or concealed on board the Vessel.
358. Non-compliance with the provisions of this clause shall amount to breach of warranty for consequences
359. of which the Charterers shall be liable and shall hold the Owners, the Master and the crew of the Vessel
360. harmless and shall keep them indemnified against all claims whatsoever which may arise and be made
361. against them individually or jointly. Furthermore, all time lost and all expenses incurred, including fines
362. as a result of the Charterers' breach of the provisions of this clause shall be for the Charterers' account
363. and the Vessel shall remain on hire.
364. Should the Vessel be arrested as a result of the Charterers non-compliance with the provisions of this
365. Clause, the Charterers shall at their expense take all reasonable steps to secure that within a reasonable
366. Time the Vessel is released and at their expense put up the bails to secure release of the Vessel.
367. The Owners shall remain responsible for all time lost and all expenses incurred, including fines, in the
368. event that unmanifested narcotic drugs and marijuana are found in the possession of effects of the
369. Vessel's personnel."
370. and
371. (e) WAR CLAUSES
372. (i)  No contraband of war shall be shipped. The Vessel shall not be required, without the consent of the
373. Owners, which shall not be unreasonably withheld, to enter any port or zone which is involved in a State
374. Of war, warlike operations, or hostilities, civil strike, insurrection or piracy whether there be a declaration
375. Of war or not, where the Vessel, cargo or crew might reasonably be expected to be subject to capture,
376. Seizure or arrest, to a hostile act by a belligerent power (the term "power" meaning any de-jure or de.
377. Facto authority or any purported governmental organization maintaining naval, military or air forces).
378. (II) If such consent is given by the Owners, the Charterers will pay the provable additional cost of insuring the
379. the Vessel against hull war risks  in an amount equal to the value under her ordinary hull policy but not
380. exceeding  a valuation of .......................................... in addition, the Owners may purchase and the
381. Charterers will pay for war risk insurance on ancillary risks such as loss of hire, freight disbursements.
382. Total loss, blocking and trapping, etc.  If such insurance is not obtainable commercially or through a
383. Government program, the Vessel shall not be required to enter or remain at any such port or zone.
384. (iii) In the event of the existence of the conditions described in (i) subsequent to the date of this Charter,
385. or while  the Vessel is on hire under this Charter, the Charterers shall , in respect of voyages to any such
386. port or zone assume the provable additional cost of wages and insurance property incurred in connection
387. with Master, Officers and crew as a consequence of such war, war like operations or hostilities.
388. (iv) Any war bonus to officers and crew due to the Vessel's trading or cargo carried shall be for the
389. Charterers' account.
390. 32.  War Cancellation
391. In the event of the outbreak of war (whether there be a declaration of war or not) between any two or
392. more of the following countries:
393. USA/UK/INDIA/PAKISTAN/IRAN/NORTH KOREA/Country of Vessel's flag/Owners directly affecting the
394. performance of this Charter..............................................................................................................
395. ...........................................................................................................................................................
396. either the owners  or the Charterers may cancel this Charter Party.  Whereupon, the charterers shall
397. redeliver the Vessel to the Owners in accordance  with Clause 10; if she has cargo on board, after
398. discharge thereof at destination, or, if debarred under this Clause from reaching or entering it, at a near
399. open and safe port as directed by the Owners; or, if she has no cargo on board, at the port at which she
400. then is, or, if at sea, at a near open and safe port as directed by the owners. In all cases hire shall
401. continue to be paid in accordance with Clause 11 and except as aforesaid all other provisions of this
402. Charter Party shall apply until redelivery.
403. 33.  Ice

404. The Vessel shall not be required to enter or remain in any icebound port or area, nor any port or area
405. where lights or lightships have been  or are about to be withdrawn by reason of ice, nor where there is
406. risk that in the ordinary course of things the Vessel will not be able on account of ice to safely enter and
407. remain in the port or area or to get out after having completed loading or discharging . Subject to the
408. Owner's prior approval the Vessel is to follow ice breakers when reasonably required with regard to  her
409. Size, construction and ice class.
410. 34. Requisition
411. Should the Vessel be requisitioned by the Government of the Vessel's flag during the period of this Charter
412. Party, the Vessel shall be deemed to be off hire during the period of such requisition, and any hire paid.
413. By the said government in respect of such requisition period shall be retained by the Owners.  The period
414. During which the Vessel is on requisition to the said Government shall count as part of the period provided
415. For in this Charter Party.
416. If the period of requisition exceeds ...................months, either party shall have the option
417. of cancelling  this Charter Party and no consequential claim may be made by either party.

418. **35. Stevedore Damage**
419. ~~Notwithstanding anything contained herein to the contrary, the Charterers shall pay for any and all~~
420. ~~damage to the Vessel caused by stevedores provided the Master has notified the Charterers and/or their~~
421. ~~agents in writing as soon as practical but not later than 48 hours after any damage is discovered. Such~~
422. ~~notice to specify the damage in detail and to invite Charterers to appoint a Surveyor to assess the extent of~~
423. ~~such damage.~~
424. ~~(a) In case of any and all damage(s) affecting the Vessel's seaworthiness and/or the safety of the crew~~
425. ~~and/or affecting the trading capabilities of the Vessel, the Charterers shall immediately arrange for repairs~~
426. ~~of such damage(s) at their expense and the Vessel is to remain on hire until such repairs are completed~~
427. ~~and if required passed by the Vessel's classification society.~~
428. ~~(b) Any and all damage(s) not described under point (a) above shall be repaired at the Charterers option~~
429. ~~before or after redelivery concurrently with the Owner's work. In such case no hire and/or expenses will~~
430. ~~be paid to the Owners except and in so far as the time and/or the expenses required for the repairs for~~
431. ~~which the Charterers are responsible, exceed the time and/or expenses necessary to carry out the~~
432. ~~Owners' work.~~
     Charterers to be responsible for all damages caused to the vessel and/or her equipments by stevedores and/or Charterers servants/agents. Master to notify Charterers or their agents in writing/telex/cable/e-mail of such damage within 24 hours of occurrence, or in case of hidden damage as soon as practicable after discovery of same but in any case prior to redelivery of the vessel. Master to cooperate with Charterers or their agents in notifying the party who caused the damage and to hold them responsible. If requested by Charterers Master to cooperate with the agents to arrange for a survey at Charterers time and expense to define, estimate the extent of damage. Damages which affects vessel's seaworthiness and/or class and/or working/trading capacity and/or safety of crew to be repaired by Charterers without delay after each occurrence in Charterers time and costs. Such repairs to be carried out to class surveyors approval. Damages which do not affect vessel's seaworthiness and/or class and/or working/trading capacity and/or safety of crew may be repaired during vessel's next regular drydock concurrently with owners work and Charterers to pay owners the repair costs against vouchers and also for the time (insofar as the time exceeds the time necessary to carry out owners work). Charterers have the right to be represented at the time of repairs in drydock. Owners to give Charterers reasonable notice of same as far as possible.
433. **36. Cleaning of Holds**
434. ~~The Charterers shall provide and pay extra for sweeping and/or washing and /or cleaning of holds between~~
435. ~~voyages and/or between cargoes provided such work can be undertaken by the crew and is permitted by~~
436. ~~local regulations, at the rate of ............................per hold.~~
437. ~~In connection with any such operation, the owners shall not be responsible if the Vessel's holds are not~~
438. ~~accepted or passed by the port or any other authority.~~ The Charterers shall have the option to redeliver
439. the vessel with unclean/unswept holds against a lumpsum payment of USD 4,000.00 in lieu of hold cleaning including removal of dunnage/debris/etc providing same can be removed by crew, otherwise any extra charges relating to removal of dunnage are for charterers' account.
440. **37. Taxes**
441. Charterers to pay all local, State, National taxes and/or dues assessed on the Vessel or the Owners
442. Resulting from the Charterers' orders herein, whether assessed during or after the currency of this Charter.
443. Party including any taxes and/or dues on cargo and/or freights and/or such freights and/or hire (excluding
444. Taxes levied by the country of the flag of the Vessel or the Owners).
445. **38. Charterers' Colors**
446. ~~The Charterers shall have the privilege of flying their own house-flag and painting the Vessel with their~~
447. ~~Own markings. The Vessel shall be repainted in the Owners' colors before termination of the Charter~~
448. ~~Party Cost and time of painting maintaining and repainting these changes effected by the Charterers~~
449. ~~Shall be for the Charterers' account.~~
450. **39. Laid up Returns**
451. The Charterers shall have the benefit of any return insurance premium receivable by the Owners from their
452. Underwriters as and when received from underwriters by reason of the Vessel being in port for a minimum
453. period of 30 consecutive days if on full hire for this period or pro rata for the time actually on hire as far as the Underwriter rules permits.
454. **40. Documentation**
455. The Owners shall provide any documentation relating to the Vessel that may be required to permit the
456. Vessel to trade within the agreed trade limits, including, but not limited to certificates of financial
457. Responsibility of oil pollution, provided such oil pollution certificates are obtainable from the Owners'
458. P&I club, valid International tonnage certificate, Suez and Panama tonnage certificates, valid certificate
459. Of registry and certificates relating to the strength and/or serviceability of the Vessel's gear.
460. **41. Stowaways**
461. (a) (i) The Charterers warrant to exercise due care and diligence in preventing stowaways in gaining
462. access to the Vessel by means of secreting away in the goods and / or containers shipped by the

463. Charterers.
464. (ii) If, despite the exercise of due care and diligence by the Charterers, stowaways have gained
465. access to the Vessel by means of secreting away in the goods and/or containers shipped by the
466. Charterers, this shall amount to breach of Charter for the consequences of which the Charterers,
467. Shall be liable and shall hold the Owners harmless and shall keep them indemnified against all
468. Claims whatsoever which may arise and be made against them. Further more, all time lost and all
469. Expenses whatsoever and howsoever incurred, including fines, shall be for the Charterers' account
470. And the vessel shall remain on hire.
471. (iii) Should the Vessel be arrested as a result of the Charterers' breach of charter according to
472. sub clause (a) (ii) above, the Charterers shall take all reasonable steps to secure that, within a
473. reasonable time, the Vessel is released and at their expense put up bail to secure release of the
474. Vessel.
475. (b) (i) If despite the exercise of due care and diligence by the Owners, stowaways have gained
476. access to the Vessel by means other than secreting away in the goods and/or containers shipped
477. by the Charterers, all time lost and all expenses whatsoever and however incurred, including
478. fines, shall be for the Owners' account and the Vessel shall be off hire.
479. (ii) Should the Vessel be arrested as a result of stowaways having gained access to the Vessel
480. by means other than secreting away in the goods and/or containers shipped by the Charterers,
481. the Owners shall take all reasonable steps to secure that, within a reasonable time, the Vessel
482. is released and at their expense put up bail to secure release of the Vessel.
483. **42. Smuggling**
484. In the event of smuggling by the Master, Officers and/or crew, the Owners shall bear the cost of any
485. Fines, taxes, or imposts levied and the Vessel shall be off hire for any time lost as a result thereof.
486. **43. Commissions**
487. A commission of 1.25 percent is payable by the Vessel and the Owners to Bancosta Beijing & 1.25 pct to
Charterhouse Shipbroking Co. Ltd ,
UK.................................................................................................................................
488. ...................................................................................................................................
489. ...................................................................................................................................
490. on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.
491. **44. Address Commission**
492. An address commission of 2.5 percent is payable to Tongli Shipping Co. Ltd
493. ...................................................................................................................................
494. ...................................................................................................................................
495. ................................................. on hire earned and paid under this Charter.
496. **45. Arbitration**
497. ~~(a) NEW YORK;~~
498. ~~All disputes arising out of this contract shall be arbitrated at New York in the following manner and~~
499. ~~Subject to U.S. Law.~~

500. ~~One arbitrator is to be appointed by each of the parties hereto and a third by the two so chosen. Their~~
501. ~~Decision   or that   of any two of them shall be final and for the purpose of enforcing any award, this~~
502. ~~Agreement may be made a rule of the court.  The Arbitrators shall be commercial men, conversant with~~
503. ~~Shipping matters.  Such Arbitration is to be conducted in accordance with the rules of the Society of~~
504. ~~Maritime Arbitrators Inc.~~
505. ~~For disputes where the total amount claimed by either party does not exceed US$ ....................~~
506. ~~The arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society~~
507. ~~Of Maritime Arbitrators Inc.~~.......................................................................................
508. ...................................................................................................................................
509. (b) LONDON
510. ~~All disputes arising out of this contract shall be arbitrated at London and, unless the parties agree~~
511. ~~forthwith on a single Arbitrator, be referred to the final arbitrament of two Arbitrators carrying on business~~
512. ~~in  London who shall be members of the Baltic Mercantile & Shipping Exchange and engaged in Shipping,~~
513. ~~One to be appointed by each of the parties, with power to such Arbitrators to appoint an Umpire.  No~~
514. ~~award shall be questioned or invalidated on the ground that any of the Arbitrators is not qualified as~~
515. ~~above, unless objection to his action be taken before the award is made.  Any dispute arising hereunder~~
516. ~~shall be governed by English Law.~~
517. ~~For disputes where the total amount claimed by either party does not exceed US$   50,000/-~~
518. ~~the arbitration shall be conducted in accordance with the Small Claims Procedure of the London Maritime~~
519. ~~Arbitrators Association.~~
520. ~~Delete para (a) or (b) as appropriate~~
521. ~~Where no figure is supplied in the blank space this provision only shall be void but the other provisions~~

522. ~~of this clause shall have full force and remain in effect.~~ SEE BIMCO STANDARD LAW & ARBITRATION
     CLAUSE 1998 – ENGLISH LAW , LONDON ARBITRATION.
523. If mutually agreed, clauses ...................45 to 61 and BIMCO Clauses...both inclusive as attached hereto are fully
524. Incorporated in this Charter Party.................................................................................................................

OWNERS:                                        CHARTERERS:

*Red Sea Pacific Sdn Bhd* C/O                  Tongli Shipping Co. Ltd
**Pacific Ship-Managers SDN.BHD , Malaysia**

525. ...................................................................................................................................................................
526. APPENDIX - "A"
527. To Charter Party dated 21st December, 2006.................................................................................
528. Between *Red Sea Pacific Sdn Bhd* C/O
        ***Pacific Ship-Managers SDN.BHD , Malaysia*** – as Owners
529. And *Tongli Shipping Co. Ltd* as Charterers.
530. Further details of the Vessel: SEE RIDER CLAUSE 46.

2007-Apr-11 09:30 PM SKULD 6323239

Z

**RIDER CLAUSES M/V "ALAM SEJAHTERA" / TONGLI SHIPPING Co. Ltd**
**CHARTER PARTY DATED 21ST DECEMBER, 2006**

**Clause 46, Description Of Vessel: (All details about)**

MV ALAM SEJAHTERA
(EX-OLYMPIC DIGNITY)

| | |
|---|---|
| Type | SD BC Dry Bulk Carrier |
| Built | January 1985 NKK Shimizy Works |
| Flag | Malaysia |
| Class | ABS |
| SDWT | 29, 692 mt |
| SDFT | 10.554 mtrs |
| GRT | 17,879 mt |
| NRT | 10,576 mt |
| LOA | 182.80 mrts |
| TPC | 37.74 mtrs |
| Beam | 23.10 mtrs |
| Holds | 5 |
| | 1) 5609 / 5365 |
| | 2) 7297 / 7029 |
| | 3) 7266 / 6976 |
| | 4) 7291 / 7012 |
| | 5) 7162 / 6977 |
| Hold Dimensions MAX Fore x Aft x Length (M) | |
| | 1) 4.7 x 16.0 x 22.7 |
| | 2) 16.0 x 16.0 x 26.0 |
| | 3) 16.0 x 16.0 x 25.2 |
| | 4) 16.0 x 16.0 x 25.4 |
| | 5) 16.0 x 11.2 x 26.0 |
| Hatches | FORE & AFT JACK-KNIFE FOLDING |
| | 1) 13.49 x 9.60 |
| | 2-5) 20.16 x 11.20 |
| Hold Tanktop Strengths | 1) 24.70 MT/SQM |
| | 2) 15.00 MT/SQM |
| | 3) 24.70 MT/SQM |
| | 4) 15.00 MT/SQM |
| | 5) 24.70 MT/SQM |
| | UPPER DECK - 3.30 MT/SQM |
| | HATCH COVER - NO 1-5) ALL 2.20 MT/SQM |
| Cranes | 4x 15mt Electro-hydraulic |
| | No. 1 Between 1 and 2 hatches 25mt 12.45m at |
| 15 deg | |
| | No. 2 Between 2 and 3 hatches 25mt 12.45m at |
| 15 deg | |
| | No. 3 Between 3 and 4 hatches 25mt 12.45m at |
| 15 deg | |
| | No. 4 Between 4 and 5 hatches 25mt 12.45m at |
| 15 deg | |

1

*-Bancosta Beijing*

RIDER CLAUSES M/V "ALAM SEJAHTERA" / TONGLI SHIPPING Co. Ltd
CHARTER PARTY DATED 21ST DECEMBER, 2006

Grabs             NA
Grain/Bale        34,625 / 33,359 cbm
ITF               Yes
WWF               NA
AHL               Yes

Average speed and consumption in good weather conditions up to BF 3 and
DSS 3 and no negative swell/no adverse current.
          About 13 Knots ON about 18.00 MT IFO ISO
8217:2005 (E) GRADE ISO-F-RME 25 (180 CST) + about 1.6MT MDO ISO 8217:2005 ISO-F-DMA
MDO

Consumption in Port
Diesel Generator - idle about 1.60 mt/day
Diesel Generator - gears working about 8 hrs/day about 2.00 mt/day
Diesel Generator - gears working about 24 hrs/day about 3.00 mt/day

Vessel has the liberty to use MDO in her main engine on entering/leaving
ports, maneuvering in canal/river/shallow/narrow/busy waters.

Hull and Machinery Value      USD9,975,000
Underwriters                  Jerneh Insurance Berhad, Malaysia
P and I Club                  Skuld, Oslo
Call Sign                     9MBH9
Inmarsat C GMDSS              453 323 410
Inmarsat B Tlx                NA
Inmarsat B Tel                NA
Inmarsat B Fax                NA
Inmarsat B Data               NA
Inmarsat B HSD 64kbits        NA
All details about and without guarantee

Owner's full style :
Red Sea Pacific Sdn Bhd
c/o PACIFIC SHIP-MANAGERS SDN. BHD.
LEVEL 17, PJ TOWER,
NO.18, JALAN PERSIARAN BARAT,
OFF JALAN TIMUR, 46050 PETALING JAYA
SELANGOR DARUL EHSAN, MALAYSIA

## Clause 47.

Vessel's holds on delivery or upon arrival first load port shall be clean, dry, free of previous cargo residues and ready to receive Charterers intended cargoes to the satisfaction of independent surveyors. In the event Vessel's holds fail above survey then Vessel to be off-hire from the time of such failure until Vessel's holds pass above survey and any directly related extra expenses for cleaning holds shall be for Owners account.

## Clause 48.

Onwers to allow Charterers to discharge cargo without presentation of Original Bills Of Lading against Charterers providing Onwers with Letter of Indemnity in accordance with P and I Club form and wording before discharge. The Letter of Indemnity to be signed by Charterers only. The

2

RIDER CLAUSES M/V "ALAM SEJAHTERA" / TONGLI SHIPPING Co. Ltd
CHARTER PARTY DATED 21ˢᵗ DECEMBER 2006

Letter of Indemnity to be issued on Charterer's corporate letter head, ink-signed by Charterer's 2 authorised signatories giving names and designations and stamped with Charterer's corporate stem. The authorised signatories must be holding a managerial position in Charterer's office. The Letter of Indemnity to be faxed to Owners along with a signed copy of Bills of Lading prior vessel arriving at the discharging ports. The original Letter of Indemnity to be couriered to Owner immediately thereafter.

### Clause 49.

Owners will instruct crew to perform services such as all opening and closing of hatches and trimming of cargo gears, free of charge to Charterer's risk and expense.

### Clause 50.

For speed/consumption/weather claims , in case of a consistent discrepancy b/w ships logs and reports of weather routing company both to have equal value in arbitration

### Clause 51.

All negotiations and eventual fixture to be kept private and confidential.

### Clause 52.

Charterers have the privilege to use forklifts onboard in all holds always for proper stowage of cargo. Always subject to Vessel's capacity/capability/tanktop strengths.

### Clause 53.

Owners or Master to cable / telex / e-mail to "Tongli Shipping Co. Ltd" and at loading port expected time of delivery and expected quantities of IFO and MGO remaining onboard at time of delivery, upon fixing. Master to cable /telex/e-mail "Tongli Shipping Co. Ltd" every 24hours noon time stating vessel's position speed, bunkers and estimated time of arrival at next port call.

### Clause 54.

Charterers have the option to use any lashing equipment as onboard, but Charterers to replace same prior to redelivery, fair wear and tear excepted.

### Clause 55.

Gangway watchman if any, at loading and/or discharging ports to be for account of party ordering same. If gangway watchmen are compulsory according to local regulations, same to be for Charterers account.

### Clause 56.

Cable / Victualling / Entertainment = Charterers to pay USD 1,250 per month pro-rata.

### Clause 57

Vessel's speed and consumption warranted under this Charter Party are under good weather conditions upto beaufort wind force 3 and douglas sea state 3. The Charterers have the option to appoint ocean routes as the weather routing company at their expense to advise  the master. The master is to follow their suggestions concerning navigation routes, but the master, at his reasonable discretion, may not follow the suggested routes, in which case he has to detail in log book the reason for not following  such suggested routes. In the  event of any speed claims fuel savings, if any, due to reduced speed is to be considered and set off as credits against such

3

*–Bancosta Beijing*

RIDER CLAUSES M/V "ALAM SEJAHTERA" / TONGLI SHIPPING Co. Ltd
CHARTER PARTY DATED 21ST DECEMBER 2006

claims. Charterers to provide supporting documents to substantiate their speed claims if any and same to be dealt with separately and not to be deducted from hire unless mutually agreed."

**Clause 58**

Neither the Charterers nor their agents shall permit the issue of any Bill of Lading, waybill or other document evidencing a contract of carriage (whether or not signed on behalf of the Owners or on the Charterers' behalf or on behalf of any Sub-Charterers) incorporating the Hamburg rules or any other legislation imposing liabilities in excess of Hague or Hague/Visby rules. The Charterers shall indemnify the Owners against any liability, loss or damage which may result from any breach of the foregoing provisions of this clause.

**Clause 59**

Owners have the option to use Charterers agents for minor Owners matters free of agency fee to Owners. Master to settle such expenses, if any incurred, in cash with agents and Charterers not to deduct any amounts from hire for estimated Owners expenses. For major Owners matters Owners to appoint their own agents or negotiate directly with Charterers agents without involving Charterers."

**Clause 60**

Liner or through or in-transit bills of lading not to be issued under this Charter Party.

**Clause 61**

Final quantity of cargo discharged shall be determined by joint draft surveys to be conducted by surveyors nominated by owners and Charterers. Owners shall not be bound by figures ascertained as Per shore tally or stevedore discharge reports/port outturn reports.

## BIMCO CLAUSES

**BIMCO STANDARD LAW & ARBITRATION CLAUSE 1998 - ENGLISH LAW, LONDON ARBITRATION.**

This charter party shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this charter party shall be referred to arbitration in

London in accordance with the arbitration act 1998 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this clause.

The arbitration shall be conducted in accordance with the London maritime arbitrators association (lmaa) terms current at the time when the arbitration proceedings are commenced.

The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other party requiring the other party to appoint its own arbitrator within 14 calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own arbitrator and gives notice that it has done so within the 14 days specified. If the other party does not appoint its own arbitrator and give

4

<em>-Bancosta Beijing</em>

## RIDER CLAUSES M/V "ALAM SEJAHTERA" / TONGLI SHIPPING Co. Ltd
## CHARTER PARTY DATED 21ST DECEMBER 2006

Notice that it has done so within the 14 days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly. The award of a sole arbitrator shall be binding on both parties as if he had been appointed by agreement.

Nothing herein shall prevent the parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator.

In cases where neither the claim nor any counter-claim exceeds the sum of USD. 50,000.00 the arbitration shall be conducted in accordance with the lmaa small claims procedure current at the time when the arbitration proceedings are commenced"

### BIMCO ISM CLAUSE

From the date of coming into force of the International Safety Management
(ISM) code in relation to the vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the vessel and "the company" (as defined by the ISM code) shall comply with the requirements of the ISM code. Upon request the Owners shall provide a copy of the relevant Document of Compliance (DOC) and the Safety Management Certificate (SMC) to the Charterers.

Except as otherwise provided in this Charter Party, loss, damage, expense or delay caused by failure on the part of the Owners or "the Company" to comply with the ISM Code shall be for the Owners' account.

### BIMCO ISPS/MTSA CLAUSE FOR TIME CHARTER PARTIES 2005

(a)     (i)The Owners shall comply with the requirements of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) relating to the Vessel and "the Company" (as defined by the ISPS Code). If trading to or from the United States or passing through United States waters, the Owners shall also comply with the requirements of the US Maritime Transportation Security Act 2002 (MTSA) relating to the Vessel and the "Owner" (as defined by the MTSA).

(ii) Upon request the Owners shall provide the Charterers with a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) and the full style contact details of the Company Security Officer (CSO).

(iii) Loss, damages, expense or delay (excluding consequential loss, damages, expense or delay) caused by failure on the part of the Owners or "the Company"/"Owner" to comply with the requirements of the ISPS Code/MTSA or this Clause shall be for the Owners' account, except as otherwise provided in this Charter Party.

(b)     (i) The Charterers shall provide the Owners and the Master with their full style contact details and, upon request, any other information the Owners require to comply with the ISPS Code/MTSA. Where sub-letting is permitted under the terms of this Charter Party, the Charterers shall ensure that the contact details of all Sub-Charterers are likewise provided to the Owners and the Master. Furthermore, the Charterers shall ensure that all sub-charter parties they enter into during the period of this Charter Party contain the following provision:

*-Bancosta Beijing*

RIDER CLAUSES M/V "ALAM SEJAHTERA" / TONGLI SHIPPING Co. Ltd
CHARTER PARTY DATED 21ST DECEMBER, 2006

"The Charterers shall provide the Owners with their full style contact details and, where sub-letting is permitted under the terms of the charter party, shall ensure that the contact details of all sub-Charterers are likewise provided to the Owners".

(II)Loss, damages, expense or delay (excluding consequential loss, damages, expense or delay) caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account, except as otherwise provided in this Charter Party.

(c) Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code/MTSA including, but not limited to, security guards, launch services, vessel escorts, security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the negligence of the Owners, Master or crew. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(d) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

**BIMCO BUNKER FUEL SULPHUR CONTENT CLAUSE FOR TIME CHARTER PARTIES 2005**

(a) Without prejudice to anything else contained in this Charter Party, the Charterers shall supply fuels of such specifications and grades to permit the Vessel, at all times, to comply with the maximum Sulphur content requirements of any emission control zone when the Vessel is ordered to trade within that zone.

The Charterers also warrant that any bunker suppliers, bunker craft operators and bunker surveyors used by the Charterers to supply such fuels shall comply with Regulations 14 and 18 of MARPOL Annex VI, including the Guidelines in respect of sampling and the provision of bunker delivery notes.

The Charterers shall indemnify, defend and hold harmless the Owners in respect of any loss, liability, delay, fines, costs or expenses arising or resulting from the Charterers' failure to comply with this Sub-clause (a).

(b) Provided always that the Charterers have fulfilled their obligations in respect of the supply of fuels in accordance with Sub-clause (a), the Owners warrant that:
(I) The Vessel shall comply with Regulations 14 and 18 of MARPOL Annex VI and with the requirements of any emission control zone; and

(II)The Vessel shall be able to consume fuels of the required Sulphur content when ordered by the Charterers to trade within any such zone.

Subject to having supplied the Vessel with fuels in accordance with Sub-clause (a), the Charterers shall not otherwise be liable for any loss, delay, fines, costs or expenses arising or resulting from the Vessel's failure to comply with Regulations 14 and 18 of MARPOL Annex VI.

(c) For the purpose of this Clause, "emission control zone" shall mean zones as stipulated in MARPOL Annex VI and/or zones regulated by regional and/or national authorities such as, but not limited to, the EU and the US Environmental Protection Agency.

6

*=Bancosta Beijing*

RIDER CLAUSES M/V "ALAM SEJAHTERA" / TONGLI SHIPPING Co. Ltd
CHARTER PARTY DATED 21ST DECEMBER, 2006

BIMCO STANDARD WAR RISKS CLAUSE FOR TIME CHARTERS, 2004
(CODE NAME: CONWARTIME 2004)

(a)    For the purpose of this Clause, the words:

(i)"Owners" shall include the shipowners, bareboat Charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and
(ii)  "War Risks" shall include any actual, threatened or reported : war; act of war; civil war; hostilities; revolution; rebellion; civil commotion; warlike operations; laying of mines; acts of piracy; acts of terrorists; acts of hostility or malicious damage; blockades (whether

imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever); by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgment of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

(b)    The Vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any waterway or canal, where it appears that the Vessel, her cargo, crew or other persons on board the Vessel, in the reasonable judgment of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks. Should the Vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

(c)    The Vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerents' right of search and/or confiscation.

(d)    (i)  The Owners may effect war risks insurance in respect of the Hull and  Machinery of the Vessel and their other interests (including, but not limited to, loss of earnings and detention, the crew and their protection and indemnity Risks), and the premiums and/or calls therefor shall be for their account.

(ii)  If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the Vessel is within, or is due to enter and remain within, or pass through any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then the actual premiums and/or calls paid shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due, or upon redelivery, whichever occurs first.

(e)    If the Owners become liable under the terms of employment to pay to the crew any bonus for additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then the  actual bonus or additional wages paid shall be reimbursed to the Owners  by the Charterers at the same time as the next payment of hire is due, or upon redelivery, whichever occurs first.

(f)    The Vessel shall have liberty:-
(i)  to comply with all orders, directions, recommendations or advice as to

7                                              =Bancosta Beijing

## RIDER CLAUSES M/V "ALAM SEJAHTERA" / TONGLI SHIPPING Co. Ltd
### CHARTER PARTY DATED 21ST DECEMBER, 2006

departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government, body or group whatsoever acting with the power to compel compliance with their orders or directions;

(ii) to comply with the order, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(iii) to comply with the terms of any resolution of the Security Council of the United Nations, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(iv) to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;

(v) to call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

(g)    If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging ports, or any one or more of them, they shall immediately inform the Charterers. No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge. Failing such

nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

(h)    If in compliance with any of the provisions of sub-clauses (b) to (g) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfillment of this Charter Party.

## BIMCO STOWAWAYS CLAUSE FOR TIME CHARTERS

(a)    (i) The Charterers warrant to exercise due care and diligence in preventing stowaways in gaining access to the Vessel by means of secreting away in the goods and/or containers shipped by the Charterers.

(ii) If, despite the exercise of due care and diligence by the Charterers, stowaways have gained access to the Vessel by means of secreting away in the goods and/or containers shipped by the Charterers, this shall amount to breach of charter for the consequences of which the Charterers shall be liable and shall hold the Owners harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them. Furthermore, all time lost and all expenses whatsoever and howsoever incurred, including fines, shall be for the Charterers' account and the Vessel shall remain on hire.

(iii) Should the Vessel be arrested as a result of the Charterers' breach of charter according to sub-clause (a)(ii) above, the Charterers shall take all reasonable steps to secure that, within a reasonable time, the Vessel is released and at their expense put up bail to secure release of the Vessel.

8

=Bancosta Beijing

RIDER CLAUSES M/V "ALAM SEJAHTERA" / TONGLI SHIPPING Co. Ltd
CHARTER PARTY DATED 21ST DECEMBER, 2006

(b)     (i) If, despite the exercise of due care and diligence by the Owners, stowaways have gained access to the Vessel by means other than secreting away in the goods and/or containers shipped by the Charterers, all time lost and all expenses whatsoever and howsoever incurred, including fines, shall be for the Owners' account and the Vessel shall be off hire.

(ii) Should the Vessel be arrested as a result of stowaways having gained access to the Vessel by means other than secreting away in the goods and/or containers shipped by the Charterers, the Owners shall take all reasonable steps to secure that, within a reasonable time, the Vessel is released and at their expense put up bail to secure release of the Vessel.

+++END

For Charterers                    For Owners
Tongli Shipping Co. Ltd           Red Sea Pacific Sdn Bhd C/O
                                  Pacific Ship-Managers SDN.BHD, Malaysia .

9

*-Bancosta Beijing*

# EXHIBIT 2

Fax sent by  : 02077022520        MARK HAMSHER        26-02-08 12:52    Pg:  2/22

COPY

<u>IN THE MATTER OF THE ARBITRATION ACT 1996</u>

<u>AND</u>

<u>IN THE MATTER OF AN ARBITRATION</u>

B E T W E E N :-

### RED SEA PACIFIC SDN BHD

<u>Claimants</u>
(Owners)

-   and –

### TONGLI SHIPPING CO. LTD.

<u>Respondents</u>
(Time Charterers)

### "ALAM SEJAHTERA"

<u>Charterparty dated 21st December 2006</u>

---

### FINAL ARBITRATION AWARD

---

W H E R E A S:-

1.   By a charterparty on an amended NYPE form dated 21st December 2006, the
     Claimants (hereinafter referred to as "the Owners") chartered the "ALAM
     SEJAHTERA" to the Respondents (hereinafter referred to as "the Charterers") for

Fax sent by  : 02077022520        MARK HAMSHER        26-02-08 12:52    Pg: 3/22

- 2 -

a time charter trip.  In the event, the vessel was delivered into the service of the Charterers on 1st January 2007 and redelivered to the Owners on 21st January 2007.

2.    The said charterparty provided, inter alia, that should any disputes arise between the parties, they were to be referred to arbitration in London, each party appointing an arbitrator and a third being appointed by the two so chosen.

3.    Disputes arose between the parties as detailed hereafter.  The Owners appointed me, Alan Oakley of Hoy's Farm, Upwick, Albury, Ware, Hertfordshire SG11 2LD, as the arbitrator nominated by them.  The Charterers appointed me, Mark Hamsher of 18c Ensign Street, London E1 8JD, as the arbitrator nominated by them.  The seat of the arbitration is in London.

4.    The parties subsequently varied the arbitration clause to the effect that if we were in agreement, we had jurisdiction to publish an award without the appointment of a third arbitrator.

5.    The Owners claimed a balance of hire in the amount of US$86,495.99 together with interest and costs.  The Charterers denied liability for the claim and counterclaimed US$19,822.62 on the balance of accounts together with interest and costs.

- 3 -

6.    We received written submissions from the Owners' Ipswich solicitors and from
      the Charterers' Hong Kong solicitors.  The parties were content that we should
      proceed to our award on the basis of written submissions alone without an oral
      attended hearing.  The Owners requested us to make a reasoned award and our
      reasons are hereby attached to and form part of this our final award.

7.    NOW WE the said Alan Oakley and Mark Hamsher, having taken upon ourselves
      the burden of this reference, having carefully and conscientiously considered the
      written evidence and submissions of the parties, having conferred and agreed with
      each other and in so doing having no need to appoint a third arbitrator, DO
      HEREBY MAKE, ISSUE AND PUBLISH this our JOINT AND AGREED
      FINAL AWARD as follows:-

A)    WE FIND that the Owners' claim for US$86,495.99 succeeds in full and the
      Charterers' counterclaim fails and is hereby dismissed.

B)    WE THEREFORE AWARD AND ADJUDGE that the Charterers shall forthwith
      pay to the Owners US$86,495.99 (eighty-six thousand, four hundred and ninety-
      five United States dollars and ninety-nine cents) together with compound interest
      thereon at the rate of 7.75% per annum compounded at three monthly rests from
      21st January 2007 until the date of payment.

Fax sent by : 02077022520          MARK HAMSHER          26-02-08 12:52    Pg: 5/22

- 4 -

C)      WE FURTHER AWARD AND ADJUDGE that the Charterers shall bear in their own and the Owners' costs of the reference, the latter, if not agreed, to be assessed in the option of the Owners either by the English High Court of Justice or by us in an award of costs, we hereby reserving our jurisdiction as necessary.

D)      WE FURTHER AWARD AND ADJUDGE that the Charterers shall bear the costs of this our award in the amount of £6,075.00 PROVIDED that if, in the first instance, the Owners shall have borne any part of the said costs of this our award, they shall be entitled to immediate reimbursement by the Charterers of the sum so paid.

E)      WE FURTHER AWARD AND ADJUDGE that the Owners shall be entitled to compound interest on any sums payable to them under paragraphs C and D above at the rate of 7.5% per annum compounded at three monthly rests from the date of this award until the date of payment or reimbursement as appropriate.

- 5 -

GIVEN under our hands in London this    **26ᵗᴸ**    day of February 2008

Alan Oakley

Witness

Mark Hamsher

Witness

# EXHIBIT 3

JUDGE JONES
07 CV 3033

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RED SEA PACIFIC SDN BHD c/o PACIFIC SHIP      :
MANAGERS SDN BHD,                              :
                                              :
                    Plaintiff,                :
                                              :
    - against -                               :
                                              :
TONGLI SHIPPING CO. LTD and TONGLI LIMITED,   :
                                              :
                    Defendants.               :
------------------------------------------------------------X

07 CV _____
ECF CASE



APR 1 6 2007

U.S.D.C. S.D. N.Y.
CASHIERS

### VERIFIED COMPLAINT

Plaintiff, RED SEA PACIFIC SDN BHD c/o PACIFIC SHIP MANAGERS SDN BHD

(hereafter referred to as "Plaintiff"), by and through its attorneys, Tisdale & Lennon, LLC, as

and for its Verified Complaint against the Defendants, TONGLI SHIPPING CO. LTD ("TSC")

and TONGLI LIMITED ("TL") (hereinafter collectively referred to as "Defendants"), alleges,

upon information and belief, as follows:

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333.

2.      At all times material to this action, Plaintiff was, and still is, a foreign company

duly organized and operating under foreign law and was at all material times the Owner of the

motor vessel "ALAM SEJAHTERA" (hereinafter the "Vessel").

3.      Upon information and belief, Defendant TSC was, and still is, a foreign

corporation, or other business entity, organized under, and existing by virtue of foreign law and

was at all material times the charterer of the Vessel.

4. Upon information and belief, Defendant TL was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law and was at all material times the alter-ego and/or alias of the Defendant TSC.

5. Pursuant to a charter party dated December 21, 2006, Plaintiff chartered the Vessel to TSC.

6. Disputes arose between the parties regarding TSC's failure to pay hire and the costs of shifting at Kaohsiung due and owing under the charter party.

7. As a result of TSC's breach of the charter party, Plaintiff has sustained damages in the total principal amount of $86,495.99 exclusive of interest, arbitration costs and attorney's fees.

8. Pursuant to the contract, all disputes arising thereunder are to be submitted to arbitration in London with English Law to apply.

9. Despite due demand TSC has failed to pay the amounts due and owing under the charter party.

10. As a result, Plaintiff is preparing to initiate arbitration on its claims.

11. Interest, costs and attorneys' fees are routinely awarded to the prevailing party in arbitration pursuant to English Law. As best as can now be estimated, Plaintiff expects to recover the following amounts:

| | | |
|---|---|---|
| A. | Principal claim: | $86,495.99 |
| B. | Estimated interest on claims:<br>3 years at 6.0%, compounded quarterly | $16,937.06 |
| C. | Estimated attorneys' fees and arbitration costs: | $36,000.00 |
| Total | | **$139,433.05** |

2

12.    Upon information and belief, Defendant TL is merely a shell-corporation through which Defendant TSC conducts its business.

13.    Upon information and belief, TL has no separate, independent identity from TSC.

14.    Upon information and belief, TL has the same address as TSC: Shandong Province, Yantai City, Zi Rong District, No. 80 Chaoyang Street, Room 1506 Qili Manson, Postal Code 261001.

15.    Furthermore, TL is the alter ego of TSC because TL dominates and disregards TSC's corporate form to the extent that TL is actually carrying on TSC's business and operations as if the same were its own, or vice-versa.

16.    Upon information and belief, TSC uses TL as a "paying agent" or "pass through" entity such that it can insulate itself from creditors relating to its charters.

17.    It is not general practice in the maritime community, nor any where else, for independent companies to make large payments on behalf of other independent companies.

18.    Upon information and belief, TL makes payments on TSC's behalf where TL has absolutely no contractual obligation to TSC's creditors.

19.    Upon information and belief, TL made a payment on TSC's behalf with regards to the above charter between TSC and Plaintiff.

20.    In the further alternative, Defendants are partners and/or are joint venturers.

21.    In the further alternative, Defendants are affiliated companies such that TL is now, or will soon be, holding assets belonging to TSC and vice versa.

22.    In the further alternative, "TONGLI LIMITED" is an alias of "TONGLI SHIPPING CO. LTD."

23.    The Defendants cannot be found within this District within the meaning of

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendants have, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees including, but not limited to, ABN Amro, American Express Bank, Bank of America, Bank of China, Bank of New York, Calyon, Citibank, Deutsche Bank, HSBC Bank USA Bank, J.P. Morgan Chase, Standard Chartered Bank and/or Wachovia Bank N.A., which are believed to be due and owing to the Defendants.

24.    The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendants held by the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendants, and to secure the Plaintiff's claim as described above.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Complaint;

B.    That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee, including, but not limited to, ABN Amro, American Express Bank, Bank of America, Bank of China, Bank of New York, Calyon, Citibank, Deutsche Bank,

HSBC Bank USA Bank, J.P. Morgan Chase, Standard Chartered Bank and/or Wachovia Bank N.A., which are due and owing to the Defendants, in the amount of $139,433.05 calculated to date to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

      C.     That this Court recognize and confirm any arbitration award or judgment rendered on the claims had herein as a Judgment of this Court;

      D.     That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

      E.     That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

      F.     That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

Dated: Southport, CT
      April 16, 2007

          The Plaintiff,
          RED SEA PACIFIC SDN BHD c/o PACIFIC SHIP
          MANAGERS SDN BHD

          By: _____
          Nancy R. Peterson (NP 2871)
          Patrick F. Lennon (PL 2162)
          TISDALE & LENNON, LLC
          11 West 42nd Street, Suite 900
          New York, NY 10036
          (212) 354-0025 – phone
          (212) 869-0067 – fax
          npeterson@tisdale-lennon.com
          plennon@tisdale-lennon.com

## ATTORNEY'S VERIFICATION

State of Connecticut  )
                      )    ss.:    Town of Southport
County of Fairfield   )

1.      My name is Nancy R. Peterson.

2.      I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

3.      I am an attorney in the firm of Tisdale & Lennon, LLC, attorneys for the

Plaintiff.

4.      I have read the foregoing Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information

and belief.

5.      The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now

within this District.

6.      The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents

and/or representatives of the Plaintiff.

7.      I am authorized to make this Verification on behalf of the Plaintiff.

Dated:      Southport, CT
             April 16, 2007

Nancy R. Peterson

# EXHIBIT 4

JONES, J

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
RED SEA PACIFIC SDN BHD c/o PACIFIC SHIP **07** : **CV** **3033**
MANAGERS SDN BHD,
                                                            :
                                                               07 CV _____
                    Plaintiff,                              :   ECF CASE

        - against -                                         :

TONGLI SHIPPING CO. LTD and TONGLI LIMITED, :

                    Defendants.                             :
                                                               USDC SDNY
                                                               DOCUMENT
                                                               ELECTRONICALLY FILED
----------------------------------------------------------X    DOC #: _____
                                                               DATE FILED: 4/16/07

## EX PARTE ORDER FOR PROCESS OF MARITIME ATTACHMENT

**WHEREAS**, on April 16, 2007 Plaintiff, RED SEA PACIFIC SDN BHD c/o PACIFIC

SHIP MANAGERS SDN BHD, filed a Verified Complaint herein for damages amounting to

$139,433.05 inclusive of interest, costs and reasonable attorney's fee, and praying for the

issuance of Process of Maritime Attachment and Garnishment pursuant to Rule B of the

Supplemental Admiralty Rules for Certain Admiralty and Maritime Claims of the Federal Rules

and Civil Procedure; and

        **WHEREAS**, the Process of Maritime Attachment and Garnishment would command that

the United States Marshal or other designated process server attach any and all of the

Defendant's property within the District of this Court; and

        **WHEREAS**, the Court has reviewed the Verified Complaint and the Supporting

Affidavit, and the conditions of Supplemental Admiralty Rule B appearing to exist, it is hereby

        **ORDERED**, that Process of Maritime Attachment and Garnishment shall issue against

all tangible or intangible property belonging to, claimed by or being held for the Defendant by

any garnishees within this District, including but not limited to, ABN Amro, American Express

A TRUE COPY
J. MICHAEL McMAHON, CLERK

BY _____
        DEPUTY CLERK

Bank, Bank of America, Bank of China, Bank of New York, Calyon, Citibank, Deutsche Bank, HSBC Bank USA Bank, J.P. Morgan Chase, Standard Chartered Bank and/or Wachovia Bank N.A., in an amount up to and including **$139,433.05**, pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure; and it is further

**ORDERED** that any person claiming an interest in the property attached or garnished pursuant to said order shall, upon application to the Court, be entitled to a prompt hearing at which the Plaintiff shall be required to show cause why the attachment and garnishment should not be vacated or other relief granted; and it is further

**ORDERED** that supplemental process enforcing the Court's Order may be issued by the Clerk upon application without further Order of the Court; and it is further

**ORDERED** that following initial service by the United States Marshal or other designated process server upon each garnishee, that supplemental service of the Process of Maritime Attachment and Garnishment, as well as this Order, may be made by way of facsimile transmission or other verifiable electronic means, including e-mail, to each garnishee; and it is further

**ORDERED** that service on any garnishee as described above is deemed effective continuous service throughout the day from the time of such service through the opening of the garnishee's business the next business day; and it is further

**ORDERED** that pursuant to Federal Rule of Civil Procedure 5(b)(2)(D) each garnishee may consent, in writing, to accept service by any other means; and it is further

2

**ORDERED** that a copy of this Order be attached to and served with said Process of

Maritime Attachment and Garnishment.

Dated: April 16, 2007

SO ORDERED:

U. S. D. J.

# EXHIBIT 5

THE PRESIDENT OF THE UNITED STATES OF AMERICA

To the Marshal of the Southern District of New York (or designated process server) - GREETINGS:

WHEREAS a Verified Complaint has been filed in the United States District Court for the Southern District of New York on the 16th day of April 2007 by

### RED SEA PACIFIC SDN BHD c/o PACIFIC SHIP MANAGERS SDN BHD,

Plaintiff,

against

### TONGLI SHIPPING CO. LTD and TONGLI LIMITED,

Defendants,

in a certain action for breach of maritime contract and indemnity wherein it is alleged that there is due and owing from the Defendants to the said Plaintiff the amount of **$139,433.05** and praying for process of maritime attachment and garnishment against the said Defendants,

WHEREAS, this process is issued pursuant to such prayer and requires that a garnishee(s) shall serve their answer(s), together with answers to any interrogatories served with the Complaint, within 20 days after service of process upon him and requires that Defendants shall serve their answers within 30 days after process has been executed, whether by attachment of property or service on the garnishee.

NOW, THEREFORE, we do hereby command you that if the said Defendants cannot be found within the District you attach goods and chattels to the amount sued for; and if such property cannot be found that you attach other property, credit and effects to the amount sued for in the hands of:

ABN Amro, American Express Bank, Bank of America, Bank of China, Bank of New York, Calyon, Citibank, Deutsche Bank, HSBC Bank USA Bank, J.P. Morgan Chase, Standard Chartered Bank and/or Wachovia Bank N.A.,

to wit:: property, letters of credit, deposits, funds, credits, bills of lading, debts, settlement agreements, or other assets, tangible or intangible, in whatever form of:

### TONGLI SHIPPING CO. LTD and TONGLI LIMITED,

and that you promptly after execution of this process, file the same in this court with your return thereon.

WITNESS, the Honorable Kimba M. Wood, Chief Judge of said Court, this _16_ day of April 2007, and of our Independence the two-hundred and thirty-first.

Tisdale & Lennon, LLC
Attorneys for Plaintiff
11 West 42nd Street, Suite 900
New York, NY 10036
(212) 354-0025

J. MICHAEL McMAHON
Clerk

By:
Deputy Clerk

*NOTE: This Process is issued pursuant to Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure and/or New York Civil Practice Law and Rules, Article 62.*

# EXHIBIT 6



11 WEST 42ND STREET, SUITE 900
NEW YORK, NY 10036
(212) 354-0025
FAX (212) 869-0067

TL@Tisdale-Lennon.com

## TISDALE & LENNON, LLC
ATTORNEYS AT LAW

10 SPRUCE STREET
SOUTHPORT, CT 06890
(203) 254-8474
FAX (203) 254-1641

www.Tisdale-Lennon.com

April 19, 2007

***Via FedEx and Facsimile 011 86-535-622762***
Tongli Shipping Co. Ltd. and Tongli Shipping
Shandong Province Yantai City
Zi Rong District
No. 80 Chaoyang Street, Room 1506, Quli Manson,
Postal Code 261001
China

**Re:**   **Red Sea Pacific Sdn Bhd c/o Pacific Ship Managers Sdn Bhd v. Tongli Shipping Co. Ltd. and Tongli Shipping**
Docket Number: 07 Civ. 3033 (BSJ)
Our Reference Number: 07-99-1663

Dear Sir or Madam:

We represent the Plaintiff, Red Sea Pacific Sdn Bhd c/o Pacific Ship Managers Sdn Bhd., in the above referenced lawsuit. We write to advise you that pursuant to an ex parte order of maritime attachment and garnishment issued in the above referenced lawsuit, your property was attached by American Express Bank on or about April 19, 2007 in the amount of $139,433.05.

Please find attached to this letter all pleadings filed in the above referenced lawsuit including, but not limited to, the Summons and Complaint. If you have any questions or concerns, please contact us at your convenience. This letter is sent pursuant to Local Rule B.2 of the Local Rules for the United States District Court for the Southern District of New York.

Sincerely,

Nancy R. Peterson

THOMAS L. TISDALE          PATRICK F. LENNON          CHARLES E. MURPHY          KEVIN J. LENNON          LAUREN C. DAVIES          NANCY R. PETERSON
ADMITTED IN NY & CT        ADMITTED IN NY & CT        ADMITTED IN NY & CT        ADMITTED IN NY & CT       ADMITTED IN CT            ADMITTED IN NY & CT



11 WEST 42ND STREET, SUITE 900
NEW YORK, NY 10036
(212) 354-0025
FAX (212) 869-0067

TL@Tisdale-Lennon.com

TISDALE & LENNON, LLC
ATTORNEYS AT LAW

10 SPRUCE STREET
SOUTHPORT, CT 06590
(203) 254-8474
FAX (203) 254-1641

www.Tisdale-Lennon.com

April 19, 2007

*Via FedEx and Facsimile 011 86-535-622762*
Tongli Shipping Co. Ltd. and Tongli Shipping
Shandong Province Yantai City
Zi Rong District
No. 80 Chaoyang Street, Room 1506, Quli Manson,
Postal Code 261001
China

Re:     **Red Sea Pacific Sdn Bhd c/o Pacific Ship Managers Sdn Bhd v. Tongli**
        **Shipping Co. Ltd. and Tongli Shipping**
        Docket Number: 07 Civ. 3033 (BSJ)
        Our Reference Number: 07-99-1663

Dear Sir or Madam:

        We represent the Plaintiff, Red Sea Pacific Sdn Bhd c/o Pacific Ship Managers
Sdn Bhd., in the above referenced lawsuit. We write to advise you that pursuant to an ex
parte order of maritime attachment and garnishment issued in the above referenced
lawsuit, your property was attached by American Express Bank on or about April 19,
2007 in the amount of $139,433.05.

        Please find attached to this letter all pleadings filed in the above referenced
lawsuit including, but not limited to, the Summons and Complaint. If you have any
questions or concerns, please contact us at your convenience. This letter is sent pursuant
to Local Rule B.2 of the Local Rules for the United States District Court for the Southern
District of New York.

                                    Sincerely,

                                    Nancy R. Peterson

THOMAS L. TISDALE     PATRICK F. LENNON     CHARLES E. MURPHY     KEVIN J. LENNON     LAUREN C. DAVIES     NANCY R. PETERSON
ADMITTED IN NY & CT   ADMITTED IN NY & CT   ADMITTED IN NY & CT   ADMITTED IN NY & CT  ADMITTED IN CT        ADMITTED IN NY & CT

| Name/Fax No. | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 9011885356622752762#/P1663 | Normal | 19.02:48pm | 4."20" | 18 | # O K | |

Fax:203-254-1641

TISDALE & LENNON
P.1

Apr 19 2007 02:52pm

** Transmit Confirmation Report **

This tracking update has been requested by:

Company Name: TISDALE LENNON   LLC

Name:  Dawn Kubie

E-mail:  'not provided by requestor'

Our records indicate that the following shipment has been delivered:

Tracking number:              798156121760
Reference:                    1663
Ship (P/U) date:              Apr 19, 2007
Delivery date:                Apr 23, 2007 11:09 AM
Sign for by:                  S.WANG
Delivered to:                 Receptionist/Front Desk
Service type:                 FedEx International Priority
Packaging type:               FedEx Envelope
Number of pieces:             1
Weight:                       1.00 lb.

Shipper Information           Recipient Information
DAWN KUBIE                    TONGLI SHIPPING
TISDALE LENNON    LLC         TONGLI SHIPPING CO. LTD.
10 SPRUCE STREET              RM 1506 15F QILI MANSION
SOUTHPORT                     80 CHAOYANG ST
CT                            YANTAI
US                            CN
06890                         264001

Special handling/Services:
Deliver Weekday

Please do not respond to this message. This email was sent from an unattended
mailbox. This report was generated at approximately 7:54 AM  CDT
on 04/23/2007.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number  above,
or visit us at fedex.com.

This tracking update has been sent to you by FedEx on the behalf of the
Requestor noted above. FedEx does not validate the authenticity of the
requestor and does not validate, guarantee or warrant the authenticity of  the
request, the requestor's message, or the accuracy of this tracking update.  For
tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

4/23/2007

# EXHIBIT 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
Red Sea Pacific SDN BHD c/o Pacific Ship
Managers SDN BHD                                    :

          Plaintiff,                     :          07 Civ 3033 (BSJ)

     - against -                                  :

Tongli Shipping Co. Ltd. and Tongli Limited    :

                         :

          Defendants.
-----------------------------------------------------------X

## AFFIDAVIT OF SERVICE

State of Connecticut )
                )   ss:    Town of Southport
County of Fairfield )

     NANCY R. PETERSON, having been duly sworn, deposes and states the following under oath:

     1.     I am a member in good standing of the Bar of this Court and an attorney in the law firm of Lennon, Murphy & Lennon, LLC, which represents the interests of the Plaintiff herein.

     2.     Service of the Summons, Complaint, Ex-Parte Order, and Process of Maritime Attachment in the instant action, was made on the Defendants Tongli Shipping Co. Ltd. and Tongli Limited by FedEx courier and Facsimile on April 19, 2007 pursuant to Rule B(2)(b) of the Supplemental Rules for Certain Admiralty and Maritime Claims. *See FedEx confirmation sheet and Facsimile confirmation sheet annexed hereto as Exhibits "1," and "2."*

3.    FedEx confirmed that Defendant received the above on April 23, 2007.

Dated: Southport, CT
August 21, 2007

Nancy R. Peterson


Sworn to and subscribed before me this
21st day of August 2007.

Notary Public

# Exhibit 1



1t WEST 42ND STREET, SUITE 500
NEW YORK, NY 10036
(212) 354-0025
FAX (212) 869-0067

TL@Tisdale-Lennon.com

TISDALE & LENNON, LLC
ATTORNEYS AT LAW

10 SPRUCE STREET
SOUTHPORT, CT 06890
(203) 254-3474
FAX (203) 254-1641

www.Tisdale-Lennon.com

April 19, 2007

*Via FedEx and Facsimile 011 86-535-622762*
Tongli Shipping Co. Ltd. and Tongli Shipping
Shandong Province Yantai City
Zi Rong District
No. 80 Chaoyang Street, Room 1506, Quli Manson,
Postal Code 261001
China

Re:     Red Sea Pacific Sdn Bhd c/o Pacific Ship Managers Sdn Bhd v. Tongli
        Shipping Co. Ltd. and Tongli Shipping
        Docket Number: 07 Civ. 3033 (BSJ)
        Our Reference Number: 07-99-1663

Dear Sir or Madam:

    We represent the Plaintiff, Red Sea Pacific Sdn Bhd c/o Pacific Ship Managers
Sdn Bhd., in the above referenced lawsuit. We write to advise you that pursuant to an ex
parte order of maritime attachment and garnishment issued in the above referenced
lawsuit, your property was attached by American Express Bank on or about April 19,
2007 in the amount of $139,433.05.

    Please find attached to this letter all pleadings filed in the above referenced
lawsuit including, but not limited to, the Summons and Complaint. If you have any
questions or concerns, please contact us at your convenience. This letter is sent pursuant
to Local Rule B.2 of the Local Rules for the United States District Court for the Southern
District of New York.

                                        Sincerely,

                                        Nancy R. Peterson

THOMAS L. TISDALE      PATRICK F. LENNON      CHARLES E. MURPHY      KEVIN J. LENNON      LAUREN C. DAVIES      NANCY R. PETERSON
ADMITTED IN NY & CT    ADMITTED IN NY & CT    ADMITTED IN NY & CT    ADMITTED IN NY & CT   ADMITTED IN CT        ADMITTED IN NY & CT

| Note | Result | Page | Time | Start | Mode | Name/Fax No. |
|------|--------|------|------|-------|------|--------------|
| | O K # | 18 | 4'20" | 19, 02:48pm | Normal | 9011865356622762#/P1663 |

Fax:203-254-1641

TISDALE & LENNON

P. 1

Apr 19 2007 02:52pm

\*\*\* Transmit Confirmation Report \*\*\*

Exhibit 2

Th  tracking update has been requested by:

Co  any Name: TISDALE LENNON   LLC

Na  :: Dawn Kubie

E-  il: 'not provided by requestor'

Ou  records indicate that the following shipment has been delivered:

Tr  king number:                  798156121760
Re  rence:                         1663
Sh  p (P/U) date:                  Apr 19, 2007
De  ivery date:                    Apr 23, 2007 11:09 AM
Si  n for by:                      S.WANG
De  ivered to:                     Receptionist/Front Desk
Se  vice type:                     FedEx International Priority
Pa  kaging type:                   FedEx Envelope
Nu  ber of pieces:                 1
We  ght:                           1.00 lb.

Sh  pper Information                Recipient Information
D   N KUBIE                         TONGLI SHIPPING
T:  DALE LENNON   LLC               TONGLI SHIPPING CO. LTD.
1(  BRUCE STREET                    RM 1506 15F QILI MANSION
S(  THPORT                          80 CHAOYANG ST
C:                                  YANTAI
U:                                  CN
O:  90                              264001

S  cial handling/Services:
D  iver Weekday

P  ase do not respond to this message. This email was sent from an unattended
m  lbox. This report was generated at approximately 7:54 AM  CDT
o  04/23/2007.

T  learn more about FedEx Express, please visit our website at fedex.com.

A  l weights are estimated.

I  track the latest status of your shipment, click on the tracking number  above,
c  visit us at fedex.com.

1  is tracking update has been sent to you by FedEx on the behalf of the
r  questor noted above. FedEx does not validate the authenticity of the
r  questor and does not validate, guarantee or warrant the authenticity of  the
r  quest, the requestor's message, or the accuracy of this tracking update.  For
r  acking results and fedex.com's terms of use, go to fedex.com.

r  ank you for your business.

# EXHIBIT 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X

RED SEA PACIFIC SDN BHD c/o PACIFIC SHIP        :
MANAGERS SDN BHD,                                :
                                                 :
                            Plaintiff,           :        07  Civ 3033 (BSJ)
                                                 :
            - against –                          :
                                                 :
TONGLI SHIPPING CO. LTD. and TONGLI LIMITED,     :
                                                 :
                            Defendants.          :
----------------------------------------------------------------------X

### ORDER DIRECTING THAT PARTIAL DEFAULT JUDGMENT BE ENTERED AGAINST DEFENDANTS, THAT THE FINAL ARBITRATION AWARD BE RECOGNIZED, CONFIRMED AND ENFORCED AS A JUDGMENTOF THIS COURT, AND THAT FUNDS BE TURNED OVER

This action having been commenced on April 16, 2007, by the filing of a

Verified Complaint and accompanying documents, and a copy of all pleadings having

been served on the Defendants TONGLI SHIPPING CO. LTD and TONGLI LIMITED,

on April 19, 2007, by express courier and/or facsimile, and Defendants not having

answered the Verified Complaint, and the time for answering the Verified Complaint

having expired; and

The Plaintiff having moved for the recognition and enforcement of the underlying

arbitral award as a Judgment of this Court, pursuant to 9 U.S.C.§201 *et. seq.* and having

requested the attorneys' fees and costs incurred herein, and a copy of the motion papers

having been served on Defendants by express courier and/or facsimile and Defendants

not having answered the motion, and the time for answering the motion having expired;

and

Upon Plaintiff's application for an Order directing the garnishee banks to turn over the funds of Defendant TONGLI LIMITED, currently restrained in New York in the amount of **$139,433.05** pursuant to Ex-Parte Order(s) of Maritime Attachment and Garnishment issued herein,

IT IS HEREBY ORDERED, ADJUDGED and DECREED:

That Partial Default Judgment be entered against TONGLI SHIPPING CO. LTD and TONGLI LIMITED, and the Final Arbitration Award be recognized, confirmed and enforced as a Judgment of this Court in the sum of **$107,085.80** and that Plaintiff's request for attorneys fees be granted in the amount of **$5,453.21**; and

That all garnishee banks, including, but not limited to, American Express Bank, shall turn over the funds of Defendant TONGLI LIMITED in the amount of **$112,539.01** which they are holding pursuant to the Ex-Parte Orders of Maritime Attachment and Garnishment issued herein to Plaintiff's counsel, or at Plaintiff's counsel's direction, forthwith; and

That the remaining funds in the amount of **$26,894.04** restrained in New York pursuant to the Ex-Parte Order of Maritime Attachment issued herein, shall continue to be restrained by garnishee banks until such time as the of costs are agreed to by the parties or assessed in London arbitration or in the English High Court of Justice, in accordance with the Final Arbitration Award.

SO ORDERED.

Dated: New York, New York
      March __, 2008

                                     _____
                                            U.S.D.J.
                   This document was entered on the docket on

                                     _____.

# EXHIBIT 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

RED SEA PACIFIC SDN BHD c/o PACIFIC SHIP
MANAGERS SDN BHD,

                            Plaintiff,        :    07 Civ 3033 (BSJ)

        - against –

TONGLI SHIPPING CO. LTD. and TONGLI LIMITED,

                        Defendants.

------------------------------------------------------------X

## CLERKS CERTIFICATE OF DEFAULT

I, Michael McMahon, Clerk of the United States District Court for the Southern District of New York, do certify that that this action commenced on April 16, 2007 with the filing of the Verified Complaint.

Defendants have not filed an Answer, made an appearance or otherwise moved with respect to the Complaint herein. The default of the Defendants is therefore noted.

Dated: March _____7____, 2008



                                    Clerk of the Court

# EXHIBIT 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

RED SEA PACIFIC SDN BHD c/o PACIFIC SHIP          :
MANAGERS SDN BHD,                                  :
                                                   :
                              Plaintiff,           :     07  Civ 3033 (BSJ)
                                                   :
            - against –                            :
                                                   :
TONGLI SHIPPING CO. LTD. and TONGLI LIMITED,       :
                                                   :
                              Defendants.          :

- ------------------------------------------------------------------------X

## STATEMENT OF DAMAGES

Plaintiff seeks judgment in the amount of **$112,539.01**The total amount requested is

based on the amounts awarded in the Final Arbitration Award as well as Plaintiff's request for

the attorney's fees and costs incurred herein.  The damages claimed are as follows:

| | |
|---|---|
| A. Principal amount: | $86,495.99 |
| B. Estimated interest on principal amount at 7.75% per annum, compounded quarterly from January 21, 2007 until estimated date of recovery ( April 1, 2008): | $ 8,304.94 |
| C.  Cost of Award: | $12,194.89 |
| D. Estimated interest on cost of award at 7.5% per annum, compounded quarterly from February 26, 2008 until estimated date of recovery (April 1, 2008): | $     89.98 |
| E.  Attorneys fees and costs incurred in the instant action: | $  4,653.21 |
| F.  Estimated additional fees to be incurred in obtaining default judgment and enforcing arbitration award: | $   800.00 |
| **Total**: | **$112,539.01** |